**James P. MAHONEY, Plaintiff,**

v.

**Juan ORTIZ, et al., Defendants.**

**No. 85 Civ. 3273 (RO).**

United States District Court,
S.D. New York.

June 26, 1986.

John P. Rudden, New York City, for plaintiff.

1. On Aug. 30, 1985, Medical Standard 50 was amended to provide for rejection even with only

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for defendants; Denise L. Thomas, of counsel.

OWEN, District Judge.

James P. Mahoney passed the November 1982 written exam for a position as police officer with the New York City Police Department. However, he was determined to be ineligible solely because he failed to meet the New York City Department of Personnel's Medical Standard 50, which at the time required automatic disqualification of any applicant who had suffered two or more dislocations of the same shoulder whether or not surgically repaired.[1] This determination, he maintains, is unlawful discrimination due to a physical disability within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the New York Executive Law, Art. 15 § 290 et seq. The action is before me on cross motions for summary judgment.

It is uncontested that plaintiff had four or five dislocations of his right shoulder prior to corrective surgery in January 1983. Doctor Xethalis, who operated on the shoulder, furnished plaintiff an affirmation on the motion stating that plaintiff has had no recurrences since the surgery and that he currently has normal strength and range of movement in the arm and shoulder. Dr. Xethalis further affirms that plaintiff is now capable of performing full police duties, although he concedes that there is a "slight" chance of a recurrence. While I am given no statistics on the frequency of shoulder dislocations among the populace at large, I am not aware that it is a problem of general incidence.

29 U.S.C. § 706(7)(B) defines a "handicapped individual" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 794 prohibits discrimination

"one or more dislocation of same shoulder whether or not surgically repaired" (sic).

against an "otherwise qualified handicapped individual" solely by reason of his handicap.

■ Defendants, relying on *E.E. Black, Ltd. v. Marshall*, 497 F.Supp. 1088 (D.Hawaii 1980), first maintain that plaintiff is not a handicapped individual. However, they clearly "regard" him as unfit for the job because of a potential for what they refer to as "nearly total incapacitation". Obviously "nearly total incapacitation" is a "limit[ation] on one or more of [his] major life activities", and he therefore fits the definition, subsection (iii). Since he has a history of dislocations, (ii) applies as well. Thus, since it is uncontested for these motions that he was declared ineligible solely because of his handicap, plaintiff has established a prima facie case and defendants bear the burden of going forward with evidence that medical standard 50 is job related. The ultimate burden of proof, of course, remains with plaintiff to show that he is qualified. See *Doe v. New York Univ.*, 666 F.2d 761, 775 (2d Cir.1981).

■ It appears to be uncontested that a dislocation of the shoulder is extremely painful and effectively disabling. Obviously, then, an unexpected dislocation caused by stress or otherwise during a chase or an arrest could endanger the police officer, fellow officers and others. Defendant maintains, apparently uncontestedly, that any requirement that the police department "accommodate" plaintiff would interfere with the department's ability to shift manpower where most needed. Thus, if defendants' position is valid that plaintiff, given his history, has a measurably greater possiblity of suffering a future dislocation than do other applicants, plaintiff's claim that he may not be denied employment solely on this basis would have to be dismissed.

In addition to plaintiff's own surgeon's concern that there is a chance of recurrence, defendants proffer three affidavits of doctors stating that even a surgically repaired shoulder is unusually likely to dis-

locate again. First, the Medical Director of the City of New York Department of Personnel, who is not an orthopedist and bases his statements on discussions with departmental orthopedic surgeons, estimates the probability "as ranging as high as 10–15%" recurrence within an unspecified time after unspecified operations. Second, the Chief Surgeon of the Health Services Division of the Police Department set forth the history of the regulation which was promulgated—before his tenure—after consultation with orthopedists, on the premise that even surgery would not reduce the chance of recurrence to acceptable levels. Third, Dr. Lampert, an orthopedist, estimates "as high as 11%" recurrence after "Bankart" and "Putti-Platt" operations, based on published reports concerning those operations, and also without specifying the time frame. While plaintiff had a "Magnuson" operation, plaintiff's surgeon, who specifically had this question before him [2] did not suggest that the Magnuson operation was not comparable to the Bankart and Putti-Platt procedures and, as stated above, conceded the chance of recurrance.

In sum, since there is a chance of a new dislocation, and its consequences could be unacceptably costly, the regulation is reasonable in excluding the apparently few who statistically have this risk from such employment. Defendants' motion for summary judgment on the federal law claims is therefore granted.

Plaintiff's cross-motion for summary judgment is necessarily denied. Despite no memorandum of law concerning plaintiff's state law claims having been submitted, since there are no federal claim to which to append they are dismissed.

So ordered.

2. Xethalis affirmation of November 19, 1985, ¶ 2.