## Sara PEREZ

v.

## The PHILADELPHIA HOUSING AUTHORITY, et al.

### Civ. A. No. 85–4788.

United States District Court, E.D. Pennsylvania.

Dec. 7, 1987.

Loralyn McKinley, Andrew F. Erba, Harold I. Goodman, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Terri Woodard Claybrook, Philadelphia Housing Authority, Philadelphia, Pa., for defendants.

## MEMORANDUM

LUDWIG, District Judge.

By order of June 16, 1987 defendants The Philadelphia Housing Authority, Garfield Harris and William Gaughan were directed to pay plaintiff's counsel, Community Legal Services, Inc., $5,000 within 30 days. Defendants' appeal followed.

Plaintiff Sara Perez filed this action on August 9, 1985 to contest her discharge from employment by PHA on July 9, 1985. The complaint sought compensatory and punitive damages together with an injunction to restore plaintiff's job status to "Injured on Duty"; and expenses, including counsel fees. The relief was premised on alleged violation of the Rehabilitation Act, 29 U.S.C. § 794, *as amended*, the Fourteenth Amendment Due Process Clause, and the Pennsylvania Workmen's Compensation Act, 77 Pa.C.S.A. § 1 *et seq.*[1] By the time of trial, May 20, 1986, plaintiff was able to return to work. On that day, the parties settled. Plaintiff gave up her substantive claims in return for reinstatement as an employee and payment of $600. Left open was the claim for counsel fees and costs. It was agreed that the maximum amount of fees awardable would be fixed or "capped" at $5,000.[2]

Following settlement, an evidentiary hearing was held on the issue whether de-

---

1. Jurisdiction: An action arising under the Constitution and the laws of the United States, 28 U.S.C. § 1331; a civil rights action, 42 U.S.C. § 1983; 28 U.S.C. § 1343(3); and pendent jurisdiction.

2. CLS agreed to this cap as part of the settlement. Its total fee claim as of the settlement was represented to be well in excess of $5,000.

fendants knew or should have known that "there had been a violation of the Rehabilitation Act or the Fourteenth Amendment." [3] Settlement hearing, May 20, 1986, N. 5–6. The parties agreed between themselves that this issue would control the recoverability of counsel fees.

Certain facts are undisputed. Plaintiff was hired by PHA on November 14, 1983 as a bilingual receptionist-clerk at an annual salary of $11,234. She was a member of a collective bargaining unit. Her job duties included answering the telephone, speaking with Hispanic tenants and visitors, notifying appropriate PHA officials as to which tenant required service, sending correspondence to tenants and answering visitor or tenant inquiries. On July 9, 1984 while at work plaintiff fell and sustained back and leg injuries that incapacited her for more than two months. She received worker's compensation benefits but remained eligible for employment benefits including medical coverage. PHA listed her as injured on duty. On September 17, 1984 plaintiff returned to work and was required to remain the entire day although her physician's note released her to work part-time. On the following day, she was allowed to work part-time. She received no other accommodation. A week and a half later, she stopped working and was returned to injured on duty status. On January 3, 1985 PHA and its insurance carrier petitioned to terminate her worker's compensation benefits. However, the insurance carrier's request for a supercedeas of benefits during the pendency of the termination petition was denied. By letter of July 10, 1985, pursuant to a one-year discharge policy, PHA informed plaintiff that her employment was terminated effective the previous day. She had no notice of the discharge policy and no prior notice of termination.

Based on the evidence presented at the hearing, the following facts are found. As a result of the July 9, 1984 accident, plaintiff sustained a severe lumbosacral sacroiliac sprain with radiculopathy. When plaintiff returned to work in September, 1984 in addition to a part-time schedule, she requested the following accommodations: (1) a wooden straight back chair; (2) use of the elevator located in the building; and (3) coverage for regular breaks. These accommodations were needed because her residual back pain was aggravated by plaintiff's sitting or standing for long periods of time or negotiating steps. These accommodations were reasonably necessary to meet the physical requirements of plaintiff's job. Largely because PHA did not provide the requested accommodations, plaintiff had to leave her job after a week and a half. No investigation of plaintiff's physical condition or her claim of handicap and IOD status was undertaken by defendants until after this action was begun.

In order to state a claim under section 504 of the Rehabilitation Act, a plaintiff must prove that he or she (1) is a "handicapped individual" under the Act; (2) is "otherwise qualified" for the position sought; (3) was excluded from the position sought solely by reason of the handicap; and that (4) the employing program or activity receives federal financial assistance.[4] *Strathie v. Department of Transportation,* 716 F.2d 227, 230 (3d Cir.1983). Here, plaintiff contends that within 30 days of service of the complaint PHA knew or should have known that she was a handicapped individual within the meaning of the Rehabilitation Act; that she was "otherwise qualified" to perform her job with

---

**3.** Under § 1988 and other fee-shifting statutes, a plaintiff who prevails by settlement is entitled to a fee award just as a party who prevails at trial. *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). *See Hewitt v. Helms,* —— U.S. ——, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). Under the usual decisional criteria, a prevailing party must substantiate that the settlement was causally related to the lawsuit. *E.g., Disabled in Action v. Pierce,* 789 F.2d 1016, 1019 (3d Cir. 1986); *Institutionalized Juveniles v. Secretary of*

*Public Welfare,* 758 F.2d 897, 910–11 (3d Cir. 1985). Here, the parties enlarged the pivotal issue to include defendants' knowledge that plaintiff had a cognizable claim against them of a pertinent statutory or constitutional violation.

**4.** PHA is a local agency of the Commonwealth of Pennsylvania. The program in which plaintiff was employed is federally funded.

accommodation; and that PHA's failure to provide her with accommodation when she returned to work and its termination of her contract pursuant to its one-year termination policy was a job exclusion occasioned solely by her handicap and, as such, violated the Rehabilitation Act.

■ The "threshold question then, is to determine whether plaintiff is 'a handicapped individual.'" *Elstner v. Southwestern Bell Telephone Co.*, 659 F.Supp. 1328, 1341 (S.D.Tex.1987). *See, e.g., Forrisi v. Brown*, 794 F.2d 931, 933 (4th Cir. 1986); *Strathie*, 716 F.2d at 230; *E.E. Black, Ltd. v. Marshall*, 497 F.Supp. 1088, 1098 (D.Hawaii 1980). The Rehabilitation Act defines "handicapped individual" as "any person who (i) *has a physical or mental impairment which substantially limits one or more of such person's major life activities,* (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(7)(B) (emphasis added).

■ In determining whether a particular person is handicapped under the Act, the Department of Health and Human Services' regulations are "an important source of guidance." *School Board v. Arline*, —— U.S. ——, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987) (quoting *Alexander v. Choate*, 469 U.S. 287, 304 n. 24, 105 S.Ct. 712, 722 n. 24, 83 L.Ed.2d 661 (1985)). Significantly, the regulations define "physical impairment" to mean:

> [A]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine.

45 CFR § 84.3(j)(2)(i) (1986). Under the regulations "major life activities" are "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Id.* at § 84.3(j)(2)(ii). Courts have delineated impairment to be "any condition which weakens, diminishes, restricts, or otherwise damages an individual's health or physical or mental activity." *E.E. Black*, 497 F.Supp. at 1098.

PHA asserts that plaintiff was not handicapped under the Rehabilitation Act because she suffered from transitory back pain and not from a commonly recognized handicap. This generalized approach is not well taken. The determination of "who is a handicapped person under the Act is best suited to a 'case-by-case determination.'" *Forrisi*, 794 F.2d at 933 (quoting *E.E. Black*, 497 F.Supp. at 1100). "The inquiry is, of necessity, an individualized one—whether the particular impairment constitutes for the particular person a significant barrier to employment." *Forrisi*, 794 F.2d at 933. *See also Elstner*, 659 F.Supp. at 1342. "It is the impaired individual that must be examined, and not just the impairment in the abstract." *E.E. Black*, 497 F.Supp. at 1099. *See also Trimble v. Carlin*, 633 F.Supp. 367 (E.D.Pa.1987) (knee injury sustained at work constituted handicap).

The record shows that plaintiff had a physical impairment that substantially limited her activities. Plaintiff testified that her back problems caused her considerable pain.[5] This pain not only affected her work but also her ability to walk, sit, stand, drive, care for her home and child, and engage in leisure pastimes. Accordingly,

---

**5.** Depositions of plaintiff's treating orthopedist and of a neurologist consultant support the conclusion that plaintiff was handicapped within the definition of the Rehabilitation Act. The orthopedist wrote notes stating his diagnosis of back injury and, in September 1984, "O.K. to return to work ... part-time only." He advised plaintiff as to her need to restrict activity and for specific work accommodations. Although PHA supervisory employees testified that they were unaware of the nature of plaintiff's problem on her return in September 1984, one admitted calling the orthopedist to find out what "part time" meant. (N. 180). She and the department head, who knew plaintiff, said they were aware she was in pain, and the latter said she advised her to wear a girdle. (N. 140–143, 181). Defendants' reliance on plaintiff's deposition testimony that she did not notify her superiors that she was "handicapped" misses the point. (N. 98).

plaintiff was a handicapped individual within the meaning of the Rehabilitation Act.

The inquiry whether plaintiff was "otherwise qualified" for her job as a bilingual receptionist at PHA must also be conducted on an individualized basis. *Arline,* —— U.S. at ——, 107 S.Ct. at 1131.

"An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). In the employment context, an otherwise qualified person is one who can perform "the essential functions" of the job in question. 45 CFR § 84.3(k) (1985). When a handicapped person is not able to perform the essential functions of the job, the court must also consider whether any "reasonable accommodation" by the employer would enable the handicapped person to perform those functions. *Ibid.* Accommodation is not reasonable if it either imposes "undue financial and administrative burdens" on a grantee, *Southeastern Community College v. Davis, supra,* at 412, 99 S.Ct., at 2370, or requires "a fundamental alteration in the nature of [the] program" *id.,* at 410 [99 S.Ct. at 2369].

*Id.* at ——, 107 S.Ct. at 1131 n. 17. *See also Strathie,* 716 F.2d at 230; *Nelson v. Thornburgh,* 567 F.Supp. 369, 379 (E.D.Pa. 1983), *aff'd,* 732 F.2d 146 (3d· Cir.), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985).

 According to the evidence, PHA knew or should have known that plaintiff was "otherwise qualified." There was no suggestion that plaintiff became totally disabled from the accident. She tried to return to work part-time but was not granted minimal accommodations. PHA employees testified that these requests were not expensive or impracticable. During the time plaintiff admittedly was unable to work because of back pain, she asked to remain in IOD status. Former PHA personnel director William Gaughan testified that retaining plaintiff on IOD would not have economically burdened PHA after July 9, 1985, the date of her termination. Her position was not filled until more than a year later.

By failing to accommodate plaintiff when she returned to work in September, 1984, PHA contravened the Rehabilitation Act. PHA's policy of summarily terminating employees who remain on IOD for over one year also violates the Act.[6] Without an individualized determination, this policy has a disparate and unjust impact on employees who sustain the worst injuries. *See, e.g., Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). These improprieties are not direct proof of plaintiff's entitlement to attorney's fees according to the fee-shifting standard agreed between the parties. But they do support the conclusion that PHA was more interested in discharging plaintiff than in ascertaining whether she was a handicapped person who qualified for job protection under the Act. Her attorney's letter of July 19, 1985 specifically stated that her termination was improper under the Act. The complaint also should have put PHA on notice of her claim. A reasonable investigation would have disclosed that plaintiff had a cognizable claim.

By virtue of the restoration of her position, plaintiff is a prevailing party, and within the parameters of the issue agreed

---

**6.** The policy also may well have violated the Due Process Clause of the Fourteenth Amendment, substantively and procedurally. Plaintiff appears to have had a vested property interest in her job. *See, e.g., Weber v. School District of Philadelphia,* 465 F.Supp. 1371 (E.D.Pa.1979). Therefore, termination without notice or hearing would lack procedural due process. *See, e.g., Logan v. Zimmerman,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Defendants argue that plaintiff was not entitled to due process because under Pennsylvania law she did not have a protectable interest in her job, citing *Scott v. Philadelphia Parking Authority,* 402 Pa. 151, 166 A.2d 278 (1960) and *Mahoney v. Philadelphia Housing Authority,* 13 Pa.Commw. 243, 320 A.2d 459 (1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975). While those cases are readily distinguishable because the employees were not covered by a collective bargaining agreement, it is not necessary to pass upon the due process issues here given the ruling on the Rehabilitation Act claim.

to by the parties, plaintiff was entitled to an award of counsel fees. The amount, $5,000, was inexpensive considering work done, responsibility undertaken, and result achieved.