Joel FUQUA

v.

UNISYS CORPORATION.

Civ. No. 4–88–83.

United States District Court,
D. Minnesota,
Fourth Division.

June 30, 1989.

Charles L. Friedman, Minneapolis, Minn., for plaintiff.

Thomas M. Sipkins, Bruce H. Little, Popham, Haik, Schnobrich & Kaufman, Minneapolis, Minn., for defendant.

## ORDER

ROSENBAUM, District Judge.

Plaintiff in this diversity action alleges a breach of the Minnesota Human Rights Act, Minnesota Statutes, §§ 363.01, *et seq.* In reply, defendant moves for summary judgment, pursuant to Rule 56, Federal

Rules of Civil Procedure, arguing plaintiff has failed to establish a *prima facie* case of discrimination pursuant to that Act. For the reasons given herein, defendant's motion for summary judgment is granted.

## I. Background

Plaintiff is an employee of defendant, working as a general laborer performing tasks such as moving furniture, washing windows, cleaning furniture and floors, emptying waste baskets, sanitizing restrooms, and other general housekeeping duties. From early May, 1987, to May, 1988, defendant refused to allow plaintiff to perform these duties, claiming its decision was based upon a back injury plaintiff sustained in April, 1987. While there is no question that plaintiff's back was injured, the exact cause of the injury is unknown.[1] Plaintiff's complaint states that he sustained the immediate injury on the job. Complaint, par. II. He also told his personal chiropractor, Dr. Gregg M. Poquette, that he injured his back lifting tool boxes and helping his brother move. Poquette Dep., Ex. 2.

Notwithstanding this diffuse history, Unisys contends its decision to disallow plaintiff from returning to work was based on a series of medical reports submitted by plaintiff's chiropractor and physicians. The first such report was a note dated May 4, 1987, from Dr. Poquette stating that plaintiff should refrain from mopping. Dr. Poquette also referred plaintiff to defendant's medical department for magnetic resonance imaging. Pursuant to an examination, defendant's company physician, Dr. C. Robert Baker, issued restrictions on May 5, 1987, against mopping and lifting over 25 pounds. The magnetic resonance imaging report, allegedly received by defendant on May 6, 1987, indicated plaintiff may have had a slipped disc. On that same day, Dr. Baker added significant restric-

tions to his report. In particular, Dr. Baker stated that plaintiff should neither bend or twist his back nor bend to lift from the floor. On May 7, 1987, Dr. Poquette reported that he agreed with Dr. Baker's new restrictions.

Based on these reports, defendant refused to allow plaintiff to return to his position as a general laborer, stating that these medical restrictions rendered plaintiff unable to perform his duties.

Roughly three weeks after agreeing to Dr. Baker's restrictions, Dr. Poquette submitted a new diagnosis calling for no restrictions.[2] Dr. Baker thereafter conducted a new examination of his own and obviously disagreed with Dr. Poquette. Dr. Baker sustained many of the restrictions included in his initial report. As a result of this disagreement between Drs. Poquette and Baker, Unisys referred plaintiff to Dr. Robert Hart, an independent physician. Upon an examination of plaintiff on June 22, 1987, Dr. Hart ordered numerous limitations including abstention from bending, twisting, lifting, and overhead work. Once again defendant refused to allow plaintiff to return to general laborer duties based on its decision that he was unqualified to perform the tasks inherent in the job.

Dr. Baker reiterated Dr. Hart's restrictions in mid-July, 1987. In August of that same year, Dr. Poquette sent a letter to an attorney representing plaintiff in an unrelated legal matter, stating that plaintiff should avoid bending or twisting his back. Plaintiff's attorney forwarded that letter to Unisys.

In April, 1988, plaintiff was cleared to return to work by his chiropractor. However, on April 21, 1988, Dr. Baker issued a report repeating the restrictions in his July 21, 1987, report, but it is unclear whether Dr. Baker actually examined defendant. A May 5, 1988, examination by Dr. Baker, however, cleared many of the previous limi-

---

**1.** Plaintiff has had a number of injuries affecting his ability to work. In July, 1985, plaintiff was involved in a traffic accident and sustained multiple injuries, including an injury to his back. A year later plaintiff fractured his skull and broke his wrist in a motorcycle accident. Fuqua Dep., pp. 77–85.

**2.** Plaintiff apparently persuaded Dr. Poquette to remove all restrictions. Poquette Dep., pp. 88–89.

tations. With this new report in hand, defendant allowed plaintiff to return to his general laborer duties on May 18, 1988.

During the 13 month period when plaintiff was not working as a general laborer for defendant, he collected unemployment compensation and 26 weeks of "short term disability payments." He also worked as a security guard. Plaintiff admits that during this absence from defendant's employ he was able to lift weights and participate in other recreational activities, notwithstanding the restrictions. There is no evidence regarding limitations on plaintiff's mobility other than those contained in the doctors' reports.

As a basis for liability, plaintiff claims defendant discriminated against him in violation of the Minnesota Human Rights Act, Minnesota Statutes, § 363.01, *et seq.* He contends his back injuries are a disability as defined in that Act, and that defendant's refusal to allow him to work constitutes a violation of the Act's prohibition against disability-based discrimination.

Plaintiff claims that he is entitled to the salary he would have earned from May, 1987, to May, 1988. He argues he was able to perform the duties of a general laborer throughout the lay off period. As evidence, he notes that his back condition is unimproved but he can still function as a general laborer.

The Minnesota Human Rights Act is intended to prohibit virtually all forms of discrimination in the work place. For the purposes of this case, it provides, in relevant part, that:

> Except when based on a bona fide occupational qualification, it is an unfair employment practice:
>
> . . . .
>
> (2) For an employer, because of . . . disability . . .
>
> (b) to discharge an employee; or
>
> (c) to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

Minnesota Statutes, § 363.03, subdivision 1(2)(b), (c). The Act defines disability as:

any condition or characteristic that renders a person a disabled person. A disabled person is any person who (1) has a physical . . . impairment which substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.

Minnesota Statutes, § 363.01, subdivision 25. A "qualified disabled person" means:

> (1) with respect to employment, a disabled person who, with reasonable accommodation, can perform the essential functions required of all applicants for the job in question; and
>
> (2) with respect to services and programs, a disabled person who, with physical and program access, meets the essential eligibility criteria required of all applicants for the program or service in question.

Minnesota Statutes, § 363.01, subdivision 25a.

Plaintiff also claims a violation of § 363.03, subdivision 1(6). That section provides that it is an unfair practice:

> for an employer with 50 or more permanent, full-time employees . . . not to make reasonable accommodation to the known disability of a qualified disabled person or job applicant unless the employer, agency, or organization can demonstrate that the accommodation would impose an undue hardship on the business, agency, or organization.

Minnesota Statutes, § 363.03, subdivision 1(6).

Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332(a)(1).

## II. Analysis

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. Summary judgment may be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322,

106 S.Ct. 2548, 2552–53 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The party opposing summary judgment must produce concrete facts demonstrating the issue for trial. *Buford v. Tremayne,* 747 F.2d 445, 447 (8th Cir.1984). The opposing party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment ... even where the evidence is likely to be within the possession of the [movant], as long as the plaintiff has had a full opportunity to conduct discovery." *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514.

A lawsuit premised on the Minnesota Human Rights Act must be considered in light of burden of proof standards promulgated by the United States Supreme Court. *Sigurdson v. Isanti County,* 386 N.W.2d 715, 719–20 (Minn.1986). A plaintiff in such a suit is required to make a *prima facie* showing of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If the plaintiff is able to present a *prima facie* case, the defendant is compelled to answer and plaintiff, in turn, is entitled to a rebuttal. *Id.* at 803–05, 93 S.Ct. at 1824–25; *Sigurdson,* 386 N.W.2d at 719–20. If a plaintiff is unable to formulate a *prima facie* case, a court need go no further and summary judgment is appropriate.

█ A *prima facie* case under the Minnesota Human Rights Act has four requirements. Plaintiff must establish that 1) he is a member of a protected class, 2) he is qualified for the job, 3) he was discharged, and 4) he was replaced. *Kovalevsky v. West Publishing Co.,* 674 F.Supp. 1379, 1385 (D.Minn.1987); *Danz v. Jones,* 263 N.W.2d 395, 399 (Minn.1978). In this case, plaintiff claims he is part of a protected class of disabled persons.[3]

As the Act makes clear, a disabled person is a person with a "physical, sensory or mental impairment which substantially limits one or more major life activities" or "has a record of such impairment" or "is regarded as having such an impairment." These terms are not crystal clear. The Minnesota Human Rights Act, for example, does not define "substantially limits" or "major life activit[y]," nor does the Act delineate a "record of ... impairment." Research has not revealed any Minnesota court's interpretation of the definition of "disability."

While Minnesota courts generally look to the federal courts to resolve claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq., Hubbard v. United Press Int'l Inc.,* 330 N.W.2d 428, 441 (Minn.1983), the federal Act does not include a provision relating to disability.

This Court is not without guidance, however. The Minnesota legislature defined "disabled person" exactly as Congress defined "handicapped individual" in § 7 of the Rehabilitation Act of 1973, 29 U.S.C. § 706(7)(B).[4] The United States Supreme Court, moreover, has concluded that regulations promulgated by the Department of Health and Human Services are of assistance in determining whether a person is handicapped within the terms of the Rehabilitation Act. *School Board of Nassau County v. Arline,* 480 U.S. 273, 279, 107 S.Ct. 1123, 1127–28, 94 L.Ed.2d 307 (1987); *Perez v. Philadelphia Housing Authority,* 677 F.Supp. 357, 360 (E.D.Pa.1987), *aff'd,* 841 F.2d 1120 (3rd Cir.1988). Those regulations define "major life activities," for example, as:

functions such as caring for one's self, performing manual tasks, walking, see-

---

**3.** To establish a violation of § 363.03, subdivision 1(6), plaintiff must show that the employer employs 50 or more workers, the employee is a qualified disabled person, the disability is known to the employer, and the employer failed to reasonably accommodate the employee. Minnesota Statutes, § 363.03, subdivision 1(6).

**4.** A "handicapped individual" is defined as:

any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(7)(B).

ing, hearing, speaking, breathing, learning and working.

45 C.F.R. § 84.3(j)(2)(ii) (1985).

Although the Minnesota Supreme Court has not explicitly embraced the law surrounding the Rehabilitation Act and accompanying regulations to define its own Act, this Court is confident Minnesota's courts would look to these federal definitions and their interpretive decisions.

It is clear that in a diversity case such a this, the Court must apply state law as declared by statute or by opinion of the Supreme Court of the State of Minnesota. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). And when that law has been elucidated by the state's courts, this Court's task is limited; it " 'is not to formulate the legal mind of the state, but merely to ascertain and apply it.' " *Stratioti v. Bick*, 704 F.2d 1052, 1054 (8th Cir.1983) (*quoting R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 826 (8th Cir.1983)). But in the absence of a Minnesota Supreme Court decision, this Court is obligated to determine the ruling that the Minnesota Supreme Court would adopt. *Meredith v. City of Winter Haven*, 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943); *Harlow v. Ryland*, 172 F.2d 784, 786 (8th Cir.1949); *Wilson v. Colonial Penn Ins. Co.*, 454 F.Supp. 1208, 1211 n. 4 (D.Minn.1978). Based upon a careful review of the relevant Minnesota law and its demonstrated reference to federal law in considering civil rights issues, the Court concludes that the Minnesota Supreme Court would adopt the interpretations given to the Rehabilitation Act in construing the Minnesota Human Rights Act.[5]

■ The Court, therefore, first considers whether plaintiff at the time in question was actually disabled: that is, he possessed a "substantial impairment" affecting a "major life activity." Plaintiff suffers from a back injury of uncertain origin. A strained back of limited duration is not commonly considered a disability. Yet, the Court cannot dismiss his claim merely because he is not afflicted with a generally recognized impairment. *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir.1986); *Perez v. Philadelphia Housing Authority*, 677 F.Supp. 357, 360 (E.D.Pa.1987). A determination of who is disabled is to be made on a case by case basis. *Forrisi*, 794 F.2d at 933; *Perez*, 677 F.Supp. at 360; *Elstner v. Southwestern Bell Telephone Co.*, 659 F.Supp. 1328, 1342 (S.D.Tex.1987), *aff'd*, 863 F.2d 881 (5th Cir.1988). The inquiry is individualized—does a particular impairment for a particular person constitute a significant barrier to employment? *Forrisi*, 794 F.2d at 933; *Perez*, 677 F.Supp. at 360.

The language of the Minnesota Human Rights Act and the Rehabilitation Act offer an initial clue as to the degree of severity an impairment must reach before it may be considered a disability. There must be a "substantial limitation" of a "major life activity." Minnesota Statutes, § 363.01, subdivision 25. These are important adjectives. *Forrisi*, 794 F.2d at 934; *Elstner*, 659 F.Supp. at 1342; *Tudyman v. United Airlines*, 608 F.Supp. 739, 745 (C.D.Cal. 1984). They have been interpreted to mean that the impairment must be significant. *Forrisi*, 794 F.2d at 933; *Elstner*, 659 F.Supp. at 1342.

■ A number of factors are also relevant to the inquiry of whether a plaintiff is disabled. These factors touch upon the effect the impairment has on "major life activities." A court may look to the number and type of jobs from which the impaired individual is disqualified, the geographical area to which he has access, and his employment expectations and training. *Forrisi*, 794 F.2d at 933; *Jasany v. United States Postal Service*, 755 F.2d 1244, 1249 (6th Cir.1985); *Elstner*, 659 F.Supp. at 1342; *Carty v. Carlin*, 623 F.Supp. 1181, 1185 (D.Md.1985).

■ Generally, exclusion from one position of employment does not constitute a substantial limitation of a "major life activity." *Forrisi*, 794 F.2d at 794–95; *Elstner*,

---

**5.** The Minnesota Court of Appeals has, in fact, adopted federal court decisions interpreting the Rehabilitation Act. *State by Cooper v. Hennepin County*, 425 N.W.2d 278, 283 (Minn.App.1988).

659 F.Supp. at 1343; *Diaz v. United States Postal Service*, 658 F.Supp. 484, 492 (E.D. Cal.1987); *Carty*, 623 F.Supp. at 1185; *Tudyman*, 608 F.Supp. at 745. A plaintiff's ability to perform other duties in the work place is also relevant. *Jasany*, 755 F.2d at 1250. A court may also examine whether a plaintiff can perform or has procured other employment. *Id.* A court may further consider a plaintiff's ability to perform activities outside of his employment. A plaintiff's participation in recreational activities, for example, may be evidence tending to undermine a finding of a disability. *Elstner*, 659 F.Supp. at 1343.

The federal courts have examined a wide variety of physical impairments impinging on employment capabilities. The following physical, sensory, or mental conditions have been determined or accepted, without question, as impairments which substantially limit a "major life activity:" chronic tuberculosis, *Arline*, 480 U.S. at 281–82, 107 S.Ct. at 1132; hepatitis B, *Kohl v. Woodhaven Learning Center*, 865 F.2d 930, 935 (8th Cir.1989); legal blindness, *Norcross v. Sneed*, 755 F.2d 113, 116 (8th Cir.1985); manic depressive syndrome, *Gardner v. Morris*, 752 F.2d 1271, 1276–84 (8th Cir.1985); arkylosing spondylitis (stiffening of the joints), *Sisson v. Helms*, 751 F.2d 991, 992–93 (9th Cir.), *cert. denied*, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985); numerous birth defects, *United States v. University Hospital, State University*, 729 F.2d 144, 154–55 (2d Cir.1984); nervous and heart conditions, *Treadwell v. Alexander*, 707 F.2d 473, 477–78 (11th Cir. 1983); multiple sclerosis, *Pushkin v. Regents of the University of Colorado*, 658 F.2d 1372, 1389–90 (10th Cir.1981); severe shoulder dislocations, *Mahoney v. Ortiz*, 645 F.Supp. 22, 24 (S.D.N.Y.1986); heart condition, *Bento v. I.T.O. Corporation of Rhode Island*, 599 F.Supp. 731, 741 (D.R.I. 1984); permanent osteoarthritis of the knee joints, *Guinn v. Bolger*, 598 F.Supp. 196, 200–02 (D.D.C.1984); cerebral palsy, nocturnal epilepsy, and dyslexia, *Fitzgerald v. Green Valley Area Education Agency*, 589 F.Supp. 1130, 1135–36 (S.D.Iowa 1984); leg amputated below the knee, *Longoria v. Harris*, 554 F.Supp. 102, 107–08 (S.D.Tex. 1982); one kidney, *Grube v. Bethlehem Area School Dist.*, 550 F.Supp. 418, 422–25 (E.D.Pa.1982); hypersensitivity to tobacco smoke, *Vickers v. Veterans Administration*, 549 F.Supp. 85, 86–87 (W.D.Wash. 1982); cardio-vascular disease, *Bey v. Bolger*, 540 F.Supp. 910, 916 (E.D.Pa.1982); and epilepsy, *Akers v. Bolton*, 531 F.Supp. 300, 313 (D.Kan.1981).

■ Plaintiff contends that by exercising due care, or with a reasonable accommodation, he could have performed the tasks of a general laborer. In reply, defendant argues it reasonably relied upon the medical reports regarding plaintiff's back and, in any case, plaintiff's impairment does not rise to the level of a disability as defined in the Minnesota Human Rights Act. The Court finds that the submitted evidence shows plaintiff was potentially disqualified from holding only one job.

The uncontradicted evidence demonstrates that plaintiff's injury simply does not fall within the statutory definition of disability. Plaintiff admits he was able to continue an active life—including a full regiment of weight lifting. He secured alternative employment as a security guard. There is no evidence regarding substantial limitations on any major life activities. In fact, the evidence before the Court affirmatively illustrates that plaintiff was not significantly hampered. Plaintiff adduces no evidence tending to show that he was restricted from a wide variety of employment in a significant geographic area. Nor does he submit evidence suggesting that the layoff frustrated his job expectations and training. As discussed, plaintiff was only disqualified from one position—a fact to which the Court may not give undue weight when considering whether plaintiff is limited in a major life activity. *See Forrisi*, 794 F.2d at 794–95; *Elstner*, 659 F.Supp. at 1343; *Diaz*, 658 F.Supp. at 492; *Tudymann*, 608 F.Supp. at 745. As such, plaintiff fails to establish his required *prima facie* case pursuant to the Minnesota Human Rights Act.

A contrary finding would undermine the Act's protections. To allow plaintiff's claim would suggest that safeguards

"available to the truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment [is] widely shared." *Forrisi*, 794 F.2d at 934; *Jasany*, 755 F.2d at 1249. This could not have been the intent of the Minnesota legislature. "Indeed, the concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his ... satisfactory employment." *Forrisi*, 794 F.2d at 934; *Jasany*, 755 F.2d at 1249. Plaintiff's injury is neither severe nor unusual.

Plaintiff has a chronic back problem. Bending, lifting, and twisting are activities inherent in general laborer's work. Doctors recognized his limitations, and when they found he was better, he returned to work. This is not a disability civil rights claim. The Court will not extend the scope of the Minnesota Human Rights Act to perpetuate plaintiff's allegations.

■ At the same time, the Court declines to accept plaintiff's contention that defendant regards him as disabled. An employer regards an individual as disabled "by finding the employee's impairment to foreclose generally the type of employment involved." *Forrisi*, 794 F.2d at 935. Thus, an employer does not perceive an employee as disabled merely by determining the employee to be unable to temporarily satisfy the requirements of a singular position. *Id.* at 934. Adoption of plaintiff's theory "would mean that anyone who failed to obtain a single job because of a single requirement of employment would become [disabled] because the employer would thus regard the applicant's failure as a [disability]." *Id.* at 935.

Plaintiff has produced no facts contradicting defendant's claimed reliance on medical records. The evidence is precisely to the contrary: when the doctors lifted his medical restrictions he returned to work. The evidence before the Court could only lead a fair-minded jury to believe that plaintiff was denied temporarily one position. As such, defendant is entitled to summary judgment on the question of whether it regarded plaintiff as disabled.

■ The Minnesota Human Rights Act also proscribes discrimination based on a "record of ... impairment." Research does not reveal a judicial gloss on the meanings of these terms, but the clear implication of the language is that an employer or prospective employer may not decline to hire, or terminate the employment of, an individual with a history of disability.

Plaintiff suggests defendant regards him as disabled based on the reports of the chiropractor and company physician. Plaintiff's reading of the statute would suggest that an employer, faced with a recorded job disabling injury, must keep a person on a job which his injury has rendered him unable to perform. Such could not be the intent of the Minnesota legislature. This claim presents no triable issue. It fails as a matter of law.

By failing to set forth facts demonstrating that he is disabled within any of the three categories of the Minnesota Human Rights Act, plaintiff has failed to establish that *prima facie* case of discrimination essential to his case. Summary judgment, therefore, is appropriate.

Accordingly, IT IS ORDERED that:

Defendant's motion for summary judgment is granted.