ROY DEAN OGBURN,                          )
                                          )
         Plaintiff/Appellee,              )         Appeal No.
                                          )         01-A-01-9702-CH-00056
VS.                                       )
                                          )         Montgomery Chancery
THE GAS AND WATER DEPARTMENT,             )         No. 90-66-204
CITY OF CLARKSVILLE, AN AGENCY OF         )
THE CITY OF CLARKSVILLE, AND THE          )
CITY OF CLARKSVILLE, A MUNICIPAL          )
CORPORATION OF THE STATE OF               )
TENNESSEE,                                )
                                          )
         Defendants/Appellants.           )

FILED

**August 27, 1997**

**Cecil W. Crowson
Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE

THE HONORABLE ROBERT W. WEDEMEYER, JUDGE


FOR THE APPELLEE:                    FOR THE APPELLANT:

CHARLES R. RAY                       J. RUSSELL FARRAR
211 Third Avenue North               WILLIAM N. BATES
P. O. Box 198288                     211 Seventh Avenue North
Nashville, TN 37219-8288             Nashville, TN 37219-1823

JOHN L. MITCHELL                     JOHN L. SOBIESKI, JR.
P. O. Box 367                        University of Tennessee College of Law
Clarksville, TN 37041-0367           2224 Dunford Hall
                                     Knoxville, TN 37996-4070



AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED



                              BEN H. CANTRELL, JUDGE


CONCUR:
KOCH, J.
CAIN, S.J.

# **O P I N I O N**

A meter reader brought suit against the city of Clarksville and its Gas and Water Department after he was fired from his job.  A Montgomery County jury found the defendants liable for handicap discrimination and for depriving the plaintiff of his due process right to a pre-termination hearing, and awarded him $450,000 in compensatory damages.  We reverse the jury verdict on the due process claim, but affirm the verdict on handicap discrimination, and we remand this case to the trial court for a new trial on damages alone.

## I.  The Facts

Roy Ogburn read water meters for three years as an employee of Clarksville's Gas & Water Department.  He had an excellent work record.  While reading meters on June 14, 1989 he was attacked by a dog.  He jumped over a fence to escape, and hurt his back.  When his symptoms did not resolve, he went to an orthopedist, W. Cooper Beazley, M.D.  Dr. Beazley diagnosed a lumbar strain, started Mr. Ogburn on a course of conservative treatment and gave him a succession of disability certificates so that his injury would have time to heal.

Mr. Ogburn underwent an MRI on October 9, 1989, which showed a very large rupture of a lumbar disc.  After the patient consulted with another orthopedist and underwent another course of conservative treatment, Dr. Beazley performed a lumbar laminectomy on January 19, 1990, and restricted Mr. Ogburn from performing any work until April 9, 1990.  Prior to that date, Mr. Ogburn underwent a work-hardening program at the Clarksville Work Enhancement Center.

On April 9 he reported to Andy Stewart, his immediate supervisor, with the intention of returning to work. Mr. Ogburn showed Mr. Stewart letters from Dr. Beazley and from Larry R. Snyder of the Work Enhancement Center. The letters stated that Mr. Ogburn was "ready to return to work on a graduated basis"; that he would initially be able to read about 100 water meters a day; and that he would gradually be able to work his way back up to a full schedule of reading 400 meters a day. The supervisor sent Mr. Ogburn home, saying "if you can't do the whole job it ain't no job." About thirty days later, Mr. Ogburn was fired by the city of Clarksville.

Though city employees are normally entitled to appeal a termination to the City Council, Mr. Ogburn was not notified of this right, and he did not receive any hearing. Apparently the Mayor was erroneously informed that Mr. Ogburn had quit his job, and he therefore did not send him a letter to notify him of his appeal rights.

On November 9, 1990, Mr. Ogburn filed a complaint against the Gas and Water Department of the city of Clarksville, and against the city itself. He claimed that his due process rights under U.S.C. 42 § 1983 had been violated, and that his termination was based on racial discrimination, as well as on handicap discrimination in violation of Tenn. Code Ann. § 8-50-103(a). Mr. Ogburn further claimed that he was a victim of retaliatory discharge because he had filed a workers' compensation claim. He asked for reinstatement in his job, back pay, and compensatory and punitive damages. The complaint was later amended to eliminate the retaliatory discharge claim.

After a one-week trial, a jury of twelve concluded that Mr. Ogburn had not in fact been a victim of racial discrimination, but that he had been wrongfully terminated from his job because of a handicap, and wrongfully denied his due process rights to a hearing. Damages were set at $450,000 plus costs and attorney fees. This appeal followed.

## II. Handicap Discrimination

The city argues on appeal that it was entitled to a directed verdict on the handicap discrimination and due process claims, and that the trial court erred in sending those claims to the jury. The appellant also argues that the trial court erred in not suggesting a remittitur. We will deal with the issue of handicap discrimination first. The relevant portion of Tenn. Code Ann. § 8-50-103 reads as follows:

> **Employment of the handicapped – Discrimination prohibited--Penalty--Complaint.--** (a) There shall be no discrimination in the hiring, firing and other terms and conditions of employment of the state of Tennessee or any department, agency, institution or political subdivision of the state, or of any private employer, against any applicant for employment based solely upon any physical, mental or visual handicap of the applicant, unless such handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved. . . .

An essential definition may be found in our human rights statute, Tenn. Code Ann. § 4-21-102(9)(A):

> (9)(A) "Handicap" means, with respect to a person:
>
> (i) A physical or mental impairment which substantially limits one (1) or more of such person's major life activities
>
> (ii) A record of having such an impairment; or
>
> (iii) Being regarded as having such an impairment.

In the present case, Mr. Ogburn presented sufficient proof to meet the definition of a handicap. His testimony and that of his wife showed that he was a physically active person who had worked on his family's farm from an early age. Even while working for the city, he continued to work on the farm in partnership with his brothers. But after he was injured, lower back pain prevented him from sitting on a tractor or a mower for more than a short period, or from riding horseback, playing softball, basketball, football or golf, or romping in the yard with his children.

Although the appellant does not raise the point, it could be argued that Mr. Ogburn is not handicapped within the meaning of Tenn. Code Ann. § 8-50-103 because his injury is temporary and will have no permanent impact.[1] Since the issue has not been raised, we will not address it here. But the question remains open, and this opinion should not be construed to stand for the proposition that Tenn. Code Ann. § 8-50-103 covers persons with temporary, work-related injuries.

The thrust of appellant's argument is rather that the statute does not apply because Mr. Ogburn's condition prevented him from "performing the duties required by the employment sought or impairs the performance of the work involved." The appellant contends that the city was under no obligation to accomodate Mr. Ogburn by allowing him to work his way back to reading 400 meters a day, or by assigning him to any sort of light duty pending further improvement of his condition.

Mr. Ogburn concedes that even though both the Federal Rehabilitation Act and the Americans with Disabilities Act require employers to furnish reasonable accomodations to disabled employees, Tenn. Code Ann. § 8-50-103 contains no such complementary provision. The record shows that the jury was instructed that the

---

[1]On at least two prior occasions, we have held that we should look to federal authorities to flesh out the meaning of Tenn. Code Ann. § 4-21-102(9)(Supp. 1996) and Tenn. Code Ann. § 8-50-103 (1993). *Hallums v. Coca-Cola Bottling Co. Consol.*, 874 S.W.2d 30, 31-32 (Tenn. Ct. App. 1993); *Cecil v. Gibson*, 820 S.W.2d 361, 364-65 (Tenn. Ct. App. 1991). In its interpretative guidelines for the Americans with Disabilities Act, the EEOC has made it clear that temporary injuries are generally not handicaps. The guidelines state specifically:

> On the other hand, temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza. Similarly, except in rare circumstances, obesity is not considered a disabling impairment.

29 C.F.R. § 1630.2(j)(Appendix)(1997). Accordingly, in contexts similar to the one involved in this case, the federal courts have held that impairments must be continuing in order to be considered either a handicap or a disability. *See, e.g., Evans v. City of Dallas*, 861 F.2d 846, 852-53 (5th Cir. 1988); *Kramer v. K & S Assocs.*, 942 F. Supp. 444, 446 (E.D. Mo. 1996). The federal courts have also held that various types of non-permanent back injuries are neither handicaps nor disabilities. *See, e.g., Rakestraw v. Carpenter Co.*, 898 F. Supp. 386, 390 (N.D. Miss. 1995)(holding that back injuries of limited duration do not constitute a handicap); *Paegle v. Department of Interior*, 813 F. Supp. 61, 64 (D.D.C. 1993)(holding that a back injury and degenerative disc syndrome is not a handicap); *Fuqua v. Unisys Corp.*, 716 F. Supp. 1201, 1205-07 (D. Minn. 1989)(holding that a strained back accompanied by a chronic back problem was not a handicap); *Visarraga v. Garrett*, No. C-88-2828, 1993 WL 209997, at *5 (N.D. Cal. July 2, 1992)(finding that lower back sprain-strain and a possible herniated disc was not a handicap).

defendant was not obligated to accommodate the plaintiff by assigning him to another task.

Mr. Ogburn's handicap discrimination claim thus rests on the contention that he was capable of doing "the whole job" nothwithstanding the letters from Dr. Beazley and Mr. Snyder indicating that it was advisable for him to gradually work his way back into it. We have found evidence in the record from which the jury could reasonably infer that Mr. Ogburn was willing and capable of doing whatever was required of him.

The testimony of Mr. Stewart, for example, indicates that on a previous occasion when Mr. Ogburn suffered an ankle injury off-the-job, Mr. Stewart allowed him to return to work, and Mr. Ogburn made his own accomodation. The Department's practice is to send out its meter readers in teams of two, with one worker reading the gas meter and the other the water meter. Reading water meters requires more bending and lifting than does reading gas meters, and on the earlier occasion Mr. Ogburn and his partner agreed between themselves to switch jobs until Mr. Ogburn's injury healed.

The proof also shows that after being sent home by Mr. Stewart (but before he was terminated) Mr. Ogburn contacted the city's insurance coordinator, Ms. Betty Peay, several times, and told her that he was prepared to do the whole job, or any job that the city was willing to assign to him. Even after he was terminated, Mr. Ogburn contacted several city officials, including the Mayor, asking to be reinstated, but to no avail. Some idea of the strength of his determination to work may be gathered from the following bits of trial testimony:

Q. Do you have pain?

A. Yes sir.

Q. Can you work with pain?

A.    Yes sir.

Q.    Will you work with pain?

A.    I will.

. . .

Q.    . . . you're asking them, are you not, for your job back?

A.    Yes, sir.

Q.    Will you do the job?

A.    I will do the job, any job that they have available

. . .

Q    . . . do you think you could have done the work, either in that position or another position --

A.    Yes, sir.

Q.    -- if you had been given the chance?

A.    If I would have been given the chance, I could have performed.

While the facts cited here may not have been sufficient in themselves to prove that Mr. Ogburn's handicap would not have impaired his performance, they were sufficient to enable the trial court to allow the question to be presented to the jury. We therefore find that the trial court did not err in declining to grant the city's motion for directed verdict on Mr. Ogburn's claim of handicap discrimination, and we affirm the jury's verdict because we find that the record contains material evidence to support it. See Rule 13(d) Tenn. R. App. P.

### III. Due Process

The Fourteenth Amendment to the U.S. Constitution prohibits the states from depriving "any person of life, liberty or property without due process of law." 42 U.S.C. § 1983 provides a private remedy for individuals who have been denied their due process rights. A protected property interest in employment does not arise under

the Constitution itself, but stems from an independent source, such as state law or contract. See *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed. 2d 548, 561 (1972).

Mr. Ogburn relies on Article IV, Section 8 of the charter of the city of Clarksville as the source of the interest he is claiming. That provision reads:

> "The mayor or any alderman or any city official or employee may be removed from office by the City Council for any crime, misconduct, unfitness or disability by vote of the City Council. The proceedings for such removal shall be upon specific charges in writing, which, with a notice stating the time and place of the hearing, shall be served upon the person so charged or left at his or her usual place of residence. The hearing may be public and the accused shall have the right to appear and defend . . . ."

The city admits that Mr. Ogburn did not receive a hearing before the City Council and was thus deprived of the benefit of a procedure that other city employees enjoyed as a matter of course. The city claims however, that its failure to grant Mr. Ogburn a hearing was the result of a simple mistake, and not of any intentional scheme directed towards him personally.

More significantly for its due process argument, the city argues that Mr. Ogburn had no reasonable expectation of continued employment, and therefore no constitutionally-protected property interest in his job that required it to afford him constitutional due process.

The city points out that Mr. Ogburn was not a tenured municipal employee and was not protected by civil service. Since no written contract or statute granted him the right to be dismissed only for cause, his employer could discharge him under the long-recognized doctrine of employment at will, whether for good cause, bad cause, or for no cause at all, without being guilty of a legal wrong. See *Harney v. Meadowbrook Nursing Center*, 784 S.W.2d 921, 922 (Tenn. 1990); *Chism*

*v. Mid-South Milling Co.*, 762 S.W.2d 552 (Tenn. 1988); *Clanton v. Cain-Sloan*, 677 S.W.2d 441 (Tenn. 1992).

The appellee has conceded that he was an employee at will. He nonetheless argues that the creation of the appeals procedure outlined in the city's charter endowed him with due process rights that the appellant could not withhold without being subject to suit under the federal statute. We respectfully disagree.

Existing rules or understandings as to continued employment, which are evidenced by written policies containing mandatory termination hearing procedures may give rise to a protected property right in that employment, which cannot be taken away without due process. See *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed. 2d 570 (1972). However the appellant has directed our attention to several cases which indicate that the placement of permissive language like "may' or "can" in such policies prevents a constitutionally-protected property interest from arising. See *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed 2d 684 (1976); *Hohmeier v. Leyden Community High School District* 212, 954 F.2d 461 (7th Cir. 1992); *Piroglu v. Coleman*, 25 F.3d 1098 (D.C. Cir. 1994). See also *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed. 2d 506 (1989).

The Clarksville City Charter states that the City Council "may" discharge an employee for cause by following a certain procedure. It does not state that this is the only method that the city may use to discharge a city employee, or that the causes mentioned in the charter provision are the only legitimate reasons for which an employee may be terminated. We are thus persuaded that the city's failure to grant Mr. Ogburn a hearing did not rise to the level of a constitutional violation. We accordingly find that the trial court erred in failing to grant the city a directed verdict on Mr. Ogburn's 42 U.S. § 1983 claim, and we reverse the jury verdict as to that claim.

## IV. Damages

The trial court instructed the jury that if it found the city guilty of racial or handicap discrimination, Mr. Ogburn should be awarded his actual damages, including damages for mental anguish, humiliation and embarrassment, as well as the costs of the lawsuit, including a reasonable attorney's fee. The court further instructed the jury that a successful litigant might also be entitled to back pay, but not to front pay or to punitive damages.

The proof at trial showed that as a result of his injury Mr. Ogburn missed five years of work and $93,195 in back pay. The proof further showed that the loss of his job had a devastating psychological impact upon him, perhaps the more so in that his repeated attempts to find another job were unsuccessful.

Because he could no longer adequately provide for his family, Mr. Ogburn became depressed, withdrawn and prone to become angry and yell at his children. He stopped going to church, and reduced his involvement in the family farm. After several years, however, his attitude improved and he started to go to church again and to take a greater interest in life. After hearing all the proof, the jury awarded Mr. Ogburn $450,000 in compensatory damages.

The city argues on appeal that the award was excessive, and that the trial court erred in not suggesting a remittitur. We pretermit this question because we feel that our reversal of the jury verdict on the due process claim requires us to order a new trial on the question of damages alone.

We realize that it is difficult to distinguish between the psychological injuries Mr. Ogburn suffered from the loss of his job and those he may have suffered because a legitimate avenue of appeal from that loss was closed to him. But since

the jury did not separate the damages Mr. Ogburn suffered from each of these claims, we believe it is necessary that the whole question of damages be revisited in the context of our finding of the city's narrowed liability.

## V. Costs and Attorney Fees

The Handicap Discrimination Act, Tenn. Code Ann. § 8-50-103(b)(2) decrees that the injured party shall have all the rights to which he is entitled under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 et seq, including, if he is the prevailing party, costs and reasonable attorney fees, Tenn. Code Ann. § 4-21-306(a)(8). At the conclusion of this case, the trial court awarded the plaintiff attorney fees and discretionary costs, in a total amount of almost $79,000.

On appeal, the city argues that since Mr. Ogburn did not prevail on all his claims, he should have at best been awarded only a part of his attorney fees and costs. In particular, the appellant alleges that Mr. Ogburn's attorney expended most of his effort on the racial discrimination claim that was rejected by the jury, so the award of attorney fees should have been reduced by 50% of more.

We note that an award of attorney fees is normally within the discretion of the trial court, and will not be reversed on appeal absent an abuse of that discretion. *Threadgill v. Threadgill*, 740 S.W.2d 419, 426 (Tenn. App. 1987). However since we have reversed the jury verdict on Mr. Ogburn's due process claim, we remand the question of attorney fees to the trial court, to be reconsidered in light of the alteration of the positions of the parties resulting from this opinion.

## VI.

The judgment of the trial court is affirmed in part and reversed in part. Remand this cause to the Chancery Court of Montgomery County for a new trial on the question of damages, and for other proceedings consistent with this opinion. Tax the costs on appeal equally between the appellant and the appellee.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
WILLIAM B. CAIN, SPECIAL JUDGE