Sharon WHITFIELD, Plaintiff,

v.

PATHMARK STORES, INC., Defendant.

Civil Action No. 96–246 MMS.

United States District Court,
D. Delaware.

July 24, 1997.

852

Richard A. Zappa and Teresa C. Fariss of Young, Conaway, Stargatt & Taylor, Wilmington, DE, for plaintiff.

Kerry Doyle Shannon of White and Williams, Wilmington, DE (Michael F. Kraemer of White and Williams, Philadelphia, PA, of counsel), for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

## INTRODUCTION

Sharon Whitfield ("Whitfield") filed this complaint against Pathmark Stores, Inc. ("Pathmark") alleging violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* (West 1995 & Supp.1996). She alleges she was a qualified individual with a disability and Pathmark discharged her because of her disability. Docket Item ("D.I.") 43, at 1. Pathmark has filed a motion for summary judgment. D.I. 52. Pathmark contends Whitfield is not disabled under the ADA, that it did not fail to make a reasonable accommodation for her, and further, that she is precluded from bringing suit because of her participation in a collective bargaining agreement which requires arbitra-

tion. D.I. 53. For the reasons that follow, Pathmark's motion will be granted.[1]

## FACTS

Whitfield was hired by Pathmark as a part-time worker in 1981. B830.[2] She suffered a back injury as a result of a car accident which took place on November 27, 1991. B108. In March 1992, she took a medical leave of absence from Pathmark due to her back injury. B1066. Whitfield was in a second car accident on January 25, 1993, which aggravated the injury to her back. B108. She attempted to return to work at Pathmark in October 1993; however, her doctor restricted her to working 12 hours per week there. B1066–67. Whitfield's doctor also recommended she not lift more than 20 pounds, and that she avoid repeated reaching, bending, stooping, driving, riding in a car, or playing sports. B26. During this period, Whitfield also worked approximately 20 hours per week at Macy's as a "cash counter"—a sedentary job. B1051–52.[3]

Pathmark originally was reluctant to permit Whitfield to return to work in October 1993; its policy was not to permit employees with medical restrictions to return to work unless the restrictions resulted from work-related injuries. B864. According to Pathmark, it only permitted Whitfield to return because it was under the impression, based on the doctor's note she submitted, that her injuries were temporary. B53; B185; B865. Because the doctor's note will be referred to frequently in this opinion, it is helpful to set it out in full. It states:

> May return to work at regular occupation as sales clerk 4 hr/day, max of 12 hrs/week, no lifting over 20 lbs for 30 days due to motor vehicle accident.

B53.[4]

When Pathmark agreed to permit Whitfield to return to work, it assigned her to the Price Integrity Coordination ("PIC") department for three 4–hour shifts per week, instead of her previous position as a clerk in the customer service center. B1068. Whitfield maintains she did not ask to be moved to this new position, and as shown above, her doctor's note states she could "return to work at regular occupation as sales clerk." B53; B1067. While her previous position in the service center involved standing, Whitfield asserts as long as her medical restrictions were observed, she could have performed the required duties of that job with the added accommodation of a stool. B1066. Whitfield has introduced the testimony of Thomas Yohe, a vocational expert, in support of that position. B87–91. Pathmark's position is Whitfield could not return to the service center job because she could not perform the essential functions of that job, including lifting more than 20 pounds. D.I. 53, at 5.

■ Whitfield's job in the PIC department involved checking price labels for accuracy and changing them when necessary. B 1068–69. The position also required her to work as a relief cashier for up to one hour per shift. B1070. Nevertheless, most of the job was sedentary. B1084. Whitfield asserts there were vacancies for PIC clerks at the time she was assigned to work there; and that other clerks were brought in after she was terminated from that position. B227; B927–28; B1044–45.[5] She also as-

---

1. In its reply brief to its motion for summary judgment, Pathmark for the first time argued summary judgment was warranted on Whitfield's claim of discharge in retaliation for her claim of discrimination. This argument, made in violation of the local rules of this district, will not be considered by the Court. *See* D. Del. LR 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief."). Accordingly, summary judgment will not be granted on Whitfield's retaliation claim.

2. The cities to "b" are to the appendix supporting plaintiff's brief.

3. Whitfield's 12 hour per week limitation at Pathmark was in addition to a 20 hour per week limitation at Macy's. *Id.*

4. Whitfield's assertion she "did not tell [Pathmark] [her] restrictions were only temporary," does not raise a material issue of fact, given the doctor's note she submitted upon her return to work clearly stated her lifting restrictions were "for 30 days[.]" B53; B1150.

5. Whitfield told the Delaware Department of Labor and the Equal Employment Opportunity Commission she was told there were job advertisements for PIC positions at Pathmark around

serts these jobs were not considered "light duty" jobs. B929; B1046. Pathmark's position is Whitfield's PIC job was a temporary accommodation created for her while she was recuperating. B866; B871.

Several months later, around December 1993 and January 1994, Whitfield was requested by Pathmark store manager Don Francis to obtain medical documentation as to whether her injury was permanent and whether she could work more than 12 hours per week. B1071–72. Whitfield's doctor, Dr. Mitchell, gave her a note dated January 21, 1994, that the injuries were permanent and she could not work more than 12 hours per week at Pathmark. B57.

In February 1994, Whitfield learned she was being taken off the work schedule at Pathmark because of her medical limitations. B229; B1014. Whitfield, who was a member of a union, called her union representative, Dave Saxton. B186; B1075–76. Saxton inquired and was told by Pathmark it could not employ Whitfield because her injuries were permanent. B1034. However, in April 1994, Pathmark denied her application for disability benefits because she continued to work at Macy's. B115.

At this point, Whitfield's attorney, Richard Zappa, Esq., became involved. B1096. Zappa and Saxton continued to negotiate with Pathmark in an effort to have Whitfield returned to work. B1034; B1039. On April 27, 1994, Whitfield filed a disability discrimination charge with the Delaware Department of Labor ("DDOL") and the U.S. Equal Employment Opportunity Commission ("EEOC"). B119.

Whitfield was permitted to return to work in May 1994; however, she was assigned to work as a cashier, a position which, because of the prolonged standing required, was contrary to her medical restrictions. B210; B1077. Working as a cashier aggravated her back injury and Whitfield requested on May 20 to return to a PIC job. B250. Around this time, the store learned of her disability charges with the DDOL and the EEOC. B120. Instead of being moved to a PIC job,

Whitfield was again taken off the schedule. B1078. Store manager Francis indicated concern Whitfield would file a workers' compensation claim. B218; B883.

On June 8, a meeting was held with Pathmark management, Whitfield, Saxton and Zappa. B 1151. Pathmark submitted a proposal to return Whitfield to work and settle the discrimination charge. B251–252. Negotiations stalled over whether Whitfield would drop her discrimination charges, and she rejected Pathmark's offer on June 9. B1151; B257. Negotiations continued unsuccessfully during the summer. B270–271.

Pathmark in 1994 formed an Americans with Disabilities/Alternate Duty Program ("ADA/ADP") committee, to decide how to respond to requests for accommodation. B1124. On February 27, 1995, the committee discussed a letter Zappa had sent to the DDOL stating Whitfield could work in the service center, the pharmacy or the office, with the accommodation of a stool and 4–hour shifts; the letter reiterated Whitfield's desire to work in the PIC department. B317–318. In-house counsel for Pathmark, Al Crane, indicated he told the DDOL Whitfield could not perform the lifting and stocking duties of her original service center position. B317. The committee also believed Whitfield could not perform the "reaching and bending" requirements of the pharmacy and office positions. B1138–1139. The committee's position on the PIC department job is unclear from the record, but at a meeting on April 29, 1995, the committee decided there was no position for which Whitfield could be reasonably accommodated. B324–25.

On April 28, 1995, the DDOL had issued a decision finding probable cause to believe Pathmark had violated Whitfield's rights under the Delaware Handicapped Persons Employment Protection Act. B135–139. On April 19, 1996, the EEOC issued a right to sue letter to Whitfield. B140. On May 1, 1996, the ADA/ADP committee decided to terminate Whitfield based on the fact she

---

the time she was terminated. B119; B138. The Court can consider this hearsay evidence on summary judgment because it is capable of being reduced to admissible testimony at trial. *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224, 1234 n. 9 (3d Cir.1993).

had not been reinstated in 18–months—which canceled her seniority rights under the union contract—and because they could not reasonably accommodate her. B 1145. Whitfield did not pursue arbitration under the union contract. B1042.

## DISCUSSION

### I. Summary Judgment Standard

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 requires the Court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). "In order to demonstrate the existence of a genuine issue of material fact, the nonmovant must supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir.1996). "In reviewing the record, the court must give the nonmoving party the benefit of all reasonable inferences." *Bray v. Marriott Hotels*, 110 F.3d 986, 989 (3d Cir.1997).

### II. Arbitration

■ Before considering Pathmark's motion for summary judgment on Whitfield's ADA claims, the Court must address Pathmark's argument that Whitfield's claims are covered by the collective bargaining agreement ("CBA") in place between Whitfield's union and Pathmark. Because she did not pursue a grievance or arbitration under the CBA, Pathmark argues, she is precluded from bringing her claim in federal court.

Pathmark relies on the Supreme Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), in which the Court found a claim brought under the Age Discrimination in Employment Act ("ADEA") could be subject to compulsory arbitration pursuant to an arbitration agreement. The arbitration agreement called for arbitration of controversies arising out of the employee's termi-

nation. In light of the Federal Arbitration Act's "liberal federal policy favoring arbitration agreements," the Court held, "[H]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue." *Id.* at 25–26, 111 S.Ct. at 1652. The Court concluded the ADEA did not evince an intention by Congress to preclude waiver of judicial remedies. *Id.*

In the *Gilmer* opinion, the Supreme Court specifically distinguished an earlier case, *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), which held the unsuccessful grievance of a claim pursuant to a collective bargaining agreement did not preclude a subsequent federal lawsuit under Title VII of the Civil Rights Act of 1964. *Gilmer* pointed to several distinctions between its facts and *Alexander*:

First, [Alexander] did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, [it] involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims.... Second because the arbitration ... occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings.... Finally, those cases were not decided under the FAA, which, as discussed above, reflects a "liberal federal policy favoring arbitration agreements."

*Id.* at 35, 111 S.Ct. at 1657 (citation omitted).

Because of these distinctions, the Third Circuit Court of Appeals has noted *Gilmer* did not overturn *Alexander*. *Bolden v. Southeastern Pennsylvania Transp. Auth.*, 953 F.2d 807, 826 n. 26 (3d Cir.1991). In *Bolden*, the court found a prior settlement of a grievance did not preclude a plaintiff from bringing suit in federal court under 42 U.S.C. § 1983. *Id.* at 826. It stated, "Since the collective bargaining agreement in this case did not require arbitration of Section 1983 claims, this case falls within [Alexander] ...." Id. at 826 n. 26.

The present case differs slightly from *Bolden*, in that Whitfield did not attempt to

pursue a grievance under her collective bargaining agreement. However, *Bolden* indicates the decisive issue is not whether Whitfield pursued a grievance, but whether she was required to do so under the terms of her collective bargaining agreement. Under *Bolden*, if Whitfield was not required to grieve her statutory claims, failure to do so will not prevent her from bringing her federal court claims.

For the following reasons the Court finds Whitfield's CBA did not require arbitration of her statutory claims. First, the language of the CBA does not specifically require arbitration of statutory ADA claims. In fact, the CBA appears only to require arbitration of claims relating to the terms of the CBA—it states the procedure for grievances and arbitration contained therein "is the exclusive method of determining employee grievances or disputes concerning the interpretation or application of the provisions of *this Agreement.*" D.I. 53, Exh. K (emphasis added). Second, Whitfield's CBA does not contain an antidiscrimination policy, which could be interpreted to require Whitfield to arbitrate discrimination claims. *See Jessie v. Carter Health Care Ctr.,* 930 F.Supp. 1174 (E.D.Ky. 1996). Therefore, because Whitfield's CBA did not require arbitration of her ADA claims, the Court will not hold her precluded from bringing her lawsuit for failure to arbitrate. *Accord Nieves v. Individualized Shirts,* 961 F.Supp. 782 (D.N.J.1997); *Randolph v. Cooper Indus.,* 879 F.Supp. 518 (W.D.Pa.1994). Pathmark's motion for summary judgment on this issue will be denied.

6. Pathmark objects to the Court's consideration that Whitfield has a "record of disability," or that she was "regarded as disabled," under the second and third ADA definitions. Pathmark argues these particular claims were not made to the EEOC and Pathmark therefore did not have notice of them until recently.

Whitfield's claims will not be dismissed based on Pathmark's lack of notice argument. First, Pathmark had the opportunity during discovery to explore the contours of Whitfield's claim; its failure to do so cannot now serve as a basis for dismissal of those claims. Second, Pathmark's claims of prejudice are unpersuasive.

Moreover, the Court will not bar the claims based on Pathmark's argument that Whitfield's failure to present them to the EEOC amounts to failure to exhaust administrative remedies. The

## III. Whitfield's ADA Claims

### A. Whitfield's claim she is Disabled

 The ADA prohibits discrimination against "qualified individual[s] with a disability." 42 U.S.C. § 12112. "Disability" is defined under the ADA in three distinct ways: An individual is disabled if she (1) has "a physical or mental impairment that substantially limits one or more of [her] major life activities"; (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(2). Whitfield claims she was disabled under each of these definitions; her claims are considered individually below.[6]

#### 1. Disabled

As noted above, under the ADA, Whitfield is considered disabled if she has "a physical or mental impairment that substantially limits one or more of [her] major life activities." It is uncontested that Whitfield had a physical impairment—her back injury. Therefore, the Court's inquiry turns to whether the impairment "substantially limits" one or more of Whitfield's major life activities.

 EEOC regulations define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). In addition, EEOC Interpretive Guidelines add, "[O]ther major life activities include, but are not limited to, sitting, standing, lifting, reaching." 29 C.F.R. Pt. 1630, App. § 1630.2(i).[7]

Third Circuit Court of Appeals has stated there is no failure to exhaust when "the acts alleged in the subsequent ... suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry,* 82 F.3d 1291, 1295 (3d Cir.1996) (quoting *Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir.1984)). Under that authority, Whitfield's claims of "perceived as" and "record of" disability will not be dismissed—the different definitions of "disabled" would all fall fairly within the scope of the prior EEOC complaint, which simply alleged discharge on the basis of disability. B119.

7. EEOC Interpretive Guidelines "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants

The Guidelines further states: " 'Major life activities' are those basic activities that the average person in the general population can perform with little or no difficulty." *Id.*

Whitfield has asserted she is substantially limited in the major life activities of standing, lifting, reaching and working. The Court first turns to Whitfield's claim she is substantially limited in the major life activities of standing, lifting and reaching.[8]

### a. Substantially Limited in the Major Life Activities of Standing, Lifting and Reaching

The regulations define the term "substantially limits" as

(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). Whitfield claims she is significantly restricted in performing the activities of standing, lifting and reaching when compared to the average person in the general population, thereby falling under (ii). To reiterate, Whitfield states she cannot lift more than 20 lbs, she cannot engage in repeated reaching, bending and stooping, and she cannot stand in one place for longer than one hour in a four-hour period. B1149. If she does so, she suffers severe pain and muscle spasms that last for several days. *Id.*

The regulations indicate certain factors are to be considered in connection with the "substantially limits" inquiry: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.*

§ 1630.20(j)(2). Additionally, the Interpretive Guidelines stress several principles. First, the definition of disabled under the ADA does not depend on a particular disease or diagnosis, but rather on how that disease or diagnosis affects the individual's life. 29 C.F.R. Pt. 1630, App. § 1630.2(j). Second, the question of substantial limitations on major life activities is determined with reference to the abilities of the average person. *Id.* Therefore, "[f]or example, an individual who had once been able to walk at an extraordinary speed would not be substantially limited in the major life activity of walking if, as a result of a physical impairment, he or she were only able to walk at an average speed, or even at moderately below average speed." *Id.*

In this case, the Court also is guided by another principle, best articulated by the Fourth Circuit Court of Appeals in *Forrisi v. Bowen,* 794 F.2d 931 (4th Cir.1986). In that case, the court stated the prohibition on disability discrimination

> assures that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment.

*Id.* at 934.

In accordance with this last principle, the Third Circuit Court of Appeals recently held a plaintiff who walked slowly and used a handrail when he climbed stairs was not substantially limited in the major life activity of walking. *Kelly v. Drexel Univ.,* 94 F.3d

may properly resort for guidance." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (citation omitted).

**8.** Under the Interpretive Guidelines, courts are directed to first consider whether individuals are substantially limited in major life activities other than work; only if the individual is unsuccessful in proving that type of substantial limitation are courts evaluate the major life activity of work. 29 C.F.R. Pt. 1630, App. § 1630.2(j).

102 (3d Cir.1996). The court emphasized that not all impairments amount to disabilities under the ADA and, after a review of relevant cases addressing limitations on the ability to walk, the court was convinced Kelly's impairment did not rise to the level of a disability.

Similar to *Kelly*, several courts have rejected ADA claims based on lifting limitations comparable to Whitfield's. The Fourth, Fifth and Eighth Circuit Courts of Appeals have held individuals who were limited to lifting less than 25 pounds were not, as a matter of law, disabled. *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346 (4th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997); *Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311 (8th Cir.1996); *Ray v. Glidden Co.*, 85 F.3d 227 (5th Cir.1996). These cases evince a belief that such limitations are not significant when compared to the limitations and abilities of the general population. *See e.g. Williams*, 101 F.3d at 349 ("[W]e hold, as a matter of law, that a twenty-five pound lifting limitation—particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to life, work, or perform any other major life activity.").

On the other hand, the Tenth Circuit Court of Appeals has held an issue of fact exists as to disability of a woman with multiple sclerosis who could not lift more than 15 pounds, and should not often lift less than that, and who also faced limitations on her stooping and bending. *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170 (10th Cir. 1996). The court did note the plaintiff's evidence was thin on the issue of her ability to lift in comparison to that of the average person, but it stated while "more specific evidence on these issues will be helpful to the

trier of fact on remand, Lowe has nevertheless presented sufficient evidence to withstand summary judgment." *Id.* at 1174.[9]

Reconciling the above-cited cases is difficult, although, obviously, the lifting limitation in *Lowe* was more severe than that in *Williams, Ray* and *Aucutt.* More importantly, however, this Court, like the *Lowe* court, is concerned about the dearth of comparative evidence presented by the plaintiff here. Whitfield has failed to meet her burden of raising a material issue of fact that her injuries caused substantial limitations when compared to the average person. Like the courts in *Williams, Ray* and *Aucutt,* this Court concludes on this record that Whitfield's injuries fall on the side of the commonplace, as opposed to the severe. Accordingly, summary judgment will be granted for Pathmark on the issue of whether Whitfield was substantially limited in the major life activities of standing, lifting and reaching.

b. Substantially Limited in the Major Life Activity of Working

■ Whitfield also asserts she faced substantial limitations on the major life activity of working. With respect to that limitation, the regulations state: "(i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3). The regulations additionally advise courts to consider the following factors in determining a limitation on the major life activity of working:

(A) The geographic area to which the individual has reasonable access;

9. Whitfield also has pointed to *Perez v. Philadelphia Hous. Auth.*, 677 F.Supp. 357 (E.D.Pa. 1987), *aff'd,* 841 F.2d 1120 (3d Cir.1988), in support of her claim she is disabled. In *Perez*, a woman who suffered a back injury which caused residual pain affecting her "work ... her ability to walk, sit, stand, drive, care for her home and child, and engage in leisure pastimes," was held disabled. 677 F.Supp. at 360–61.

However, *Perez* arose on an unusual posture. The parties had settled, and they were before the

court on the issue of attorney's fees, having agreed the award would be governed by whether the court found there had been a violation of the Rehabilitation Act or the Fourteenth Amendment. Thus, for the purposes of attorney's fees alone, the court determined as a matter of law whether the plaintiff was disabled. Due to its unusual posture, the precedential value of *Perez* with respect to the present case is slight.

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad class of jobs in various classes).

*Id.*

The Interpretive Guidelines also make clear the plaintiff's burden of showing the availability of other jobs is not "onerous." 29 C.F.R. Pt. 1630, App. § 1630.2(j). Rather what is required is the presentation of "general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g. 'few,' 'many,' 'most') from which an individual would be excluded because of an impairment." *Id.* Finally, the Interpretive Guidelines provide this relevant example: "[A]n individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs." *Id.*

Despite the broad nature of this example, the Court finds Whitfield also has not met her burden of proving she is substantially limited in the major life activity of work. While the record contains evidence of Whitfield's medical limitations, there exists nothing connecting those limitations to ability to perform other jobs in the community. The general statement in the Interpretive Guidelines about back injuries, in isolation, cannot boost Whitfield over the summary judgment hurdle. *Cf. McKay v. Toyota Motor Mfg.,* 110 F.3d 369 (6th Cir.1997) (holding plaintiff with carpal tunnel syndrome who could not perform heavy lifting failed to meet burden of establishing substantial limitation in major

life activity of work); *Bolton v. Scrivner, Inc.,* 36 F.3d 939 (10th Cir.1994) (same, where plaintiff was restricted in lifting and standing); *Corrigan v. Perry,* 961 F.Supp. 132 (E.D.Va.1997) (same, where plaintiff suffered lifting restrictions); *but see Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 911 (7th Cir.1996) (finding an issue of fact existed as to disability of employee who injured shoulder, in light of the back injury example in the Interpretive Guidelines).

The only information Whitfield has submitted that potentially meets her burden is a vocational report prepared by Thomas Yohe of Delaware Valley Rehabilitation Services. B87–B107. However, the stated object of this report is to evaluate Whitfield's earning capacity. *See* B92 ("The above-captioned file was referred to me for the purpose of conducting a vocational assessment in order to evaluate Ms. Whitfield's present wage earning capacity and to render a determination as to whether she has sustained current and/or future wage loss as a result of her motor vehicle accidents...."). The report outlined Whitfield's interests and potential future earning capacity in a variety of other positions. It did not address the number and/or type of jobs Whitfield will be unable to perform due to her back injury. Accordingly, summary judgment will be granted for Pathmark on the issue of whether Whitfield was disabled within the first definition under the ADA.

### 2. Record of Impairment

■ Whitfield alternatively contends she is disabled because she has a record of impairment. The regulations define a record of impairment as "a history of, or [being] misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1603.2(k). The Interpretive Guidelines explain, "This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities." 29 C.F.R. Pt. 1630, App. § 1630.2(k). Pathmark contends Whitfield is not disabled un-

der this definition because her limitations were not substantial. Whitfield urges the fact she could not work at Pathmark for 18 months following her accident and could not work at all for 4 months following the accident qualifies as a record of impairment, of which Pathmark obviously had notice. Further, she had submitted a doctor's note to Pathmark detailing her limitations.

■ As the Court has found above, Whitfield has not put forth evidence regarding the severity of her limitations from which a reasonable fact finder could find she was substantially limited in a major life activity. Focusing especially on the record relied upon by Pathmark at the time of the allegedly discriminatory acts, a fact-finder could at most find Pathmark believed Whitfield had a temporary back injury from which she was recuperating. Temporary injuries are generally not considered disabilities under the ADA, unless they have more than a minimal residual effect. *Roush v. Weastec, Inc.,* 96 F.3d 840, 843 (6th Cir.1996); *Sanders v. Arneson Prods.,* 91 F.3d 1351, 1354 (9th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997). Because Whitfield has not adduced evidence from which a reasonable fact finder could conclude she had a record of a substantially limiting impairment, summary judgment on this issue will be granted.

### 3. Regarded As Disabled

■ Whitfield further claims she was "regarded as" disabled by Pathmark. The regulations state an individual is regarded as disabled if that person: "(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) Has none of the impairments defined in ... this section but is treated by a covered entity as having a substantially limiting impairment." 29 C.F.R. § 1630.2(l).

The EEOC Interpretive Guidelines and legislative history to the ADA indicate this provision was inserted to address, among other things, "myths, fears and stereotypes" associated with disabilities. 29 C.F.R. Pt. 1630, App. § 1630.2(l); H.R.Rep. No. 101–485, at 29 (1990) U.S.Code Cong. & Admin.News 1990 at pp. 445, 451, 452. Accordingly, as noted by the Third Circuit Court of Appeals, analysis of this claim therefore focuses not on the individual and his or her abilities, but on the employer's perception of the individual. *Kelly,* 94 F.3d at 108–09; *see also Olson v. General Elec. Astrospace,* 101 F.3d 947, 953 (3d Cir.1996). However, something more than mere knowledge on the employer's part of the disability is required to sustain a claim of "regarded as" disabled. *Kelly,* 94 F.3d at 109. As indicated by the regulations, the employer must "treat" that employee as if he or she were disabled.

In *Olson,* the Third Circuit Court of Appeals considered a case in which the plaintiff claimed his employer regarded him as disabled. The plaintiff had interviewed to be reinstated to a position with the defendant company following a layoff. The defendant's employee who interviewed the plaintiff knew the plaintiff had been hospitalized for depression and spent one-third of the interview discussing the plaintiff's health. The interviewer subsequently recommended another candidate for the job. In denying summary judgment for the defendant, the court stated, "[I]t is clear that a reasonable fact-finder could infer that [the interviewer] perceived [the plaintiff] to be disabled. One could reasonably conclude that this affected the recommendation [the interviewer] made...." 101 F.3d at 955.

Whitfield states she was "regarded as" disabled by Pathmark in the sense that once it learned her limitations were permanent, it took her off the schedule claiming there were no jobs she could perform within her medical limitations. As further evidence she was "regarded as" disabled by Pathmark, Whitfield points to the fact store manager Francis opposed her return to work for fear she would file a workers' compensation claim, and that her case was handled by the ADA/ADP Committee.

Pathmark's position is its perception of Whitfield's health was shaped entirely by her

doctor's note, and therefore, there can be no claim she was "regarded as" disabled. *See Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995) (affirming summary judgment for employer in case of claimed "regarded as" disability; stating "The evidence bearing on Farmland Foods' perception of Wooten's impairment indicates that its perception was not based upon speculation, stereotype or myth, but upon a doctor's written restriction of Wooten's physical abilities."). Pathmark asserts it was not initially aware Whitfield's limitations were permanent—it intended to transfer Whitfield to the PIC department only as a temporary measure while she was recuperating. Once it learned her limitations were permanent, Pathmark claims, it removed her from the schedule, concluding it had no jobs she could perform with such limitations. As further evidence it did not consider her disabled, Pathmark urges, when Whitfield returned to work in May 1994, it assigned her to work as a cashier—a position Whitfield ultimately sought removal from because it aggravated her back injury. Such are not the actions of an employer who regards its employee as disabled, Pathmark contends.

The Court agrees with Pathmark that its actions do not demonstrate it perceived Whitfield as disabled. The evidence, even viewed most favorably to Whitfield, shows Pathmark rejected her request for accommodation in either the customer service department or in the PIC department. Because Whitfield had asserted the need for such accommodation in order to perform her job, Pathmark took her off the schedule. In essence, then, Whitfield's claim seems supported only by the fact that Pathmark did not communicate its thought process to her. Stated differently, this case would be easier if Pathmark had told Whitfield she could return to work provided she performed her job within the same parameters as the other workers. That would clearly demonstrate Pathmark's perception she was not disabled. However, while Pathmark did not say so in so many words, its position was nevertheless communicated by its actions: the uncontroverted evidence is Whitfield was free to return to work, but only on terms which were applicable to all employees. That is the op-posite of "perceived of" disability discrimination.

■■■ The Court's view is not disturbed by Whitfield's arguments either that she was "regarded as" disabled because her case was handled by the ADA/ADP Committee, or because Francis exhibited concerns she would re-injure herself and file a workers' compensation claim. First, the ADA/ADP Committee was formed to address requests for accommodation; it is only logical Whitfield's request—whether or not it was based on a bona fide "disability" under the ADA—would be referred to that committee. That does not translate into a finding that Pathmark perceived her as disabled. Second, although Francis did testify he was concerned about Whitfield filing a workers' compensation claim, his testimony does not demonstrate fear she would re-injure herself so much as fear she would claim workers' compensation for injuries truly attributable to her car accident. Francis' testimony was:

Q: Why was [a workers' compensation claim] a concern to you?

A: Because she comes back with a restriction of 12 hours, 20 pounds, and the restrictions get greater, greater, and greater. I was concerned that we were going to get charged a workmens' comp charge claiming she was claiming she hurt herself at work.

B883. Neither of Whitfield's arguments refutes the fact that Pathmark never treated her as if she were disabled. Accordingly, Pathmark's motion for summary judgment on this issue will be granted.

## IV. Conclusion

The Court finds Whitfield has not established she was disabled under any of the definitions found in the ADA. Therefore, summary judgment will be granted for Pathmark on all Whitfield's ADA claims with the exception of her retaliation claim.