**EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION and
James Smith, Plaintiffs,**

v.

**GENERAL ELECTRIC COMPANY,
Defendant.**

**No. Civ. 1:97CV53.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

July 21, 1998.

Thomas R Lemon, Lemon Armey Hearn & Leininger, Warsaw, IN, for Thomas R Lemon, mediator.

Michelle Eisele, Laurie A Young, C Gregory Stewart, Nancy Dean Edmonds, Gwendolyn Young Reams, Equal Employment Opportunity Commission, Indianapolis, IN, for Equal Employment Opportunity Commission, plaintiff.

Mark A. Garvin, Herbert C. Snyder, Jr., Dawn R. Westfield, Kathleen M. Anderson, Barnes and Thornburg, Fort Wayne, IN, for General Electric Co, defendant.

Charles F Leonard, Tremper Bechert Leonard and Terrill, Fort Wayne, IN, for James A Smith, intervenor plaintiff.

*ORDER*

WILLIAM C. LEE, Chief Judge.

This matter is before the court on a motion for summary judgment filed by the defendant General Electric Company ("GE") on March 10, 1998. The parties completed briefing the motion on June 19, 1998. For the following reasons, GE's motion will be granted.

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id. In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. *See, Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. 2505. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

### Discussion

This suit was initiated by the United States Equal Employment Opportunity Commission ("EEOC"), under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). The EEOC, plaintiff James Smith ("Smith"), and GE have stipulated to the dismissal, with prejudice, of the EEOC from this action[1]. Thus, Smith is presently the only remaining plaintiff.

---

1. This stipulation has not yet been filed with this court because Smith is involved in a bankruptcy proceeding and GE believes that it must obtain the consent of the bankruptcy trustee for the dismissal of the EEOC from this action. However, GE anticipates that such consent will be granted, and the parties have proceeded in this case as if the EEOC is no longer a party. For purposes of ruling on the present motion, the court will follow the parties' lead and consider Smith to be the only plaintiff.

Smith began his employment with GE in Fort Wayne, Indiana, in 1980. During the relevant time period, Smith was employed by GE as a Standardizing Electrician, Technician/Electrician in the Wire Mill in Fort Wayne, Indiana. In his complaint, Smith alleges that GE subjected him to harassment because of his perceived disability (HIV/AIDS) and that Smith was forced to terminate his employment because of the harassment. Smith left GE on or about August 15, 1994.

In April 1992, Smith was treated for an esophageal tear at the Broward General Medical Center in Fort Lauderdale, Florida[2]. The records of Broward General reveal that at the time of Smith's admission on April 15, 1992, he told the emergency room staff that he is homosexual and that he had tested negative for HIV antibodies in 1989[3]. Smith claims that during his hospitalization at Broward General, he became convinced he was infected with HIV. According to Smith, Dr. Gupta asked Smith how long he had been HIV-positive[4]. Smith then allegedly adopted the belief that he was, in fact, HIV-positive[5]. Dr. Gupta has emphatically denied that he would ever tell any patient that the patient is HIV-positive without first having the benefit of the positive test result[6]. No test for HIV was performed on Smith while he was a patient at Broward General[7]. At the time of his discharge from the hospital, Smith was given a return to work slip that stated he could return to work on June 1, 1992. However, Smith did not return to work until August of 1992. Upon his return to work, rumors circulated that Smith had AIDS[8]. In his deposition, Smith asserts that he was subjected to steady and escalating harassment at the workplace[9]. On August 15, 1994, Smith was hospitalized for one night after a container of enamel was allegedly dropped on him. When Smith was released shortly thereafter to return to work, he refused to return. Smith filed a Charge of Discrimination with the EEOC on January 19, 1995, alleging various incidents of harassment occurred beginning in 1992.

In support of its motion for summary judgment, GE argues that Smith is not entitled to the protections of the ADA. To proceed under the ADA, Smith must establish that he is an individual with a "disability" as defined by the Act. Smith's burden of proving that he is a qualified individual with a disability is a "threshold matter." *Kriskovic v. Wal–Mart Stores, Inc.*, 948 F.Supp. 1355, 1361 (E.D.Wis.1996), citing *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir.1995). A plaintiff's threshold burden remains the same even though they assert claims of harassment on the basis of disability. *Rio v. Runyon*, 972 F.Supp. 1446, 1459 n. 16 (S.D.Fla.1997).

To be "disabled" under the ADA, Smith must fall within one of the three potential categories of disability set forth under the Act. The Act states:

> The term "disability" means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The determination of disability is made on an individualized, case-by-case basis. *Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959, 962 (7th Cir.1996). In *Homeyer*, the Court observed: "A disability determination ... should not be based on abstract lists or categories of impairments, as there are varying degrees of impairments...." *Id.* See also *Runnebaum v. NationsBank*, 123 F.3d 156, 166 (4th Cir.1997) ("[T]he statute's 'individualized focus' con-

---

**2.** Gupta Dep. at 8–9, 22; Ex. B, p. BRW10011.

**3.** Gupta Dep. at 16; Ex B, p. BRW10011.

**4.** Smith Dep. at 124–25.

**5.** Smith Dep. at 126.

**6.** Gupta Dep. at 17–18, 26–28.

**7.** Gupta Dep. at 18.

**8.** Causey Dep. at 97–99; Marshall Dep. at 6–7, 8–9, 48–49.

**9.** Smith Dep. at 96–97, 158–59, 211–15, 223–24, 259–63, 278–82, 295–98, 303–04, 335–54, 347–63, 372–74.

templates a case-by-case determination of whether a given impairment substantially limits one or more of the major life activities of the individual ...”). The EEOC regulations note that a finding of disability:

is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual. Some impairments may be disabling for particular individuals but not for others, depending upon the stage of the disease or disorder, the presence of other impairments that combine to make the impairment disabling or any number of other factors.

29 C.F.R. app. § 1630.2(j).

GE argues that Smith's suit fails because he does not have an actual impairment, nor did GE management ever treat Smith as having an impairment that substantially limits a major life activity. 42 U.S.C. § 12102(2)(A) provides that a person is disabled if he or she actually has a physical or mental impairment that substantially limits one or more major life activities. A physical or mental impairment is defined in 29 C.F.R. § 1630.2(h) as:

(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

“Substantially limited” is defined in 29 C.F.R. § 1630.2(j)(1) as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

■ The ADA prohibits discrimination by an employer “against a qualified individual with a disability because of a disability.” 42 U.S.C. § 12112(a). A “disability” encompasses “being regarded as” having “a[n] ... impairment that substantially limits one or more major life activities.” According to 29 C.F.R. § 1630.2(*l*), “regarded as having such an impairment” means that the employee:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others towards such impairment; or

(3) Has none of the impairments defined in paragraphs (h)(1) or (2) (of this section) but is treated by a covered entity as having a substantially limiting impairment.

Smith does not claim that he was “regarded” as having an impairment within the meaning of subsections 1 or 2 above. Rather, Smith claims that he fits within subsection 3 above. GE, however, argues that even though Smith has presented evidence that some of Smith's supervisors perceived him to be HIV-infected, there is no evidence that GE perceived Smith to be substantially limited in any major life activity or treated him as though he has such limitations. Clearly, an individual who has an impairment that is not substantially limiting (or has no impairment at all) is nevertheless “disabled” if he is treated by the employer as having an impairment that does substantially limit major life activities. *Katz v. City Metal Co., Inc.,* 87 F.3d 26, 32 (1st Cir.1996); *Whitfield v. Pathmark Stores, Inc.,* 971 F.Supp. 851, 860 (D.Del.1997) (“[S]omething more than mere knowledge on the employer's part of the disability is required to sustain a claim of ‘regarded as’ disabled ... As indicated by the regulations, the employer must ‘treat that employee as if he or she were disabled.”)

■ As with real impairments, “a perceived impairment must be substantially limiting and significant.” *Thompson v. Holy Family Hosp.,* 121 F.3d 537, 541 (9th Cir. 1997). The proper test in “regarded as” cases “is whether the impairment, as perceived, would affect the individual's ability to find work across the spectrum of same or similar jobs.” *Duff v. Lobdell–Emery Ma-*

*nuf. Co.*, 926 F.Supp. 799, 806 (N.D.Ind. 1996). Thus, Smith must produce evidence that proves or tends to prove that GE believed that Smith's purported impairment created a significant limitation. *See Byrne v. Board of Educ., School of West Allis–West Milwaukee*, 979 F.2d 560, 565 (7th Cir.1992); *Marschand v. Norfolk & Western Ry. Co.*, 876 F.Supp. 1528, 1538–40 (N.D.Ind.1995). Further, it is not enough to show that GE perceived Smith as impaired; rather, "the perceived impairment must substantially limit a major life activity." *Marschand*, 876 F.Supp. at 1540. *See also Howard v. Navistar*, 904 F.Supp. 922, 930 (E.D.Wis.1995) ("Whether Navistar regarded him as being physically impaired is irrelevant. What matters is whether Navistar regarded the impairment substantially limiting Howard's ability to perform a major life activity."). Thus, Smith must present evidence that some action or inaction by GE was based upon a belief that Smith was substantially limited in a major life activity.

GE argues that Smith's own testimony shows that Smith continued to perform his normal job duties as a standardizer, even after Smith erroneously reported to GE that he was HIV-infected. Smith also admitted that none of his supervisors questioned his ability to do his job as a result of his report that he was HIV-infected[10]. It is clear that Smith must demonstrate that he was perceived as being substantially limited in a major life activity, and treated as though he has such a limitation. *Runnebaum v. NationsBank of Maryland, N.A.*, 123 F.3d 156 (4th Cir.1997). In *Runnebaum*, the plaintiff had asymptomatic HIV, and alleged that NationsBank terminated him in violation of the ADA. *Id.* 123 F.3d at 162. The plaintiff's supervisor testified that he felt "panicky" and "uncontrolled" at the time the plaintiff confided in him regarding his HIV infection. *Id.* at 172. Nevertheless the court concluded that there was no proof that this supervisor or the defendant regarded the plaintiff's HIV infection as substantially limiting one of his major life activities. *Id.* at 172.

Likewise, in *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907 (11th Cir.1996),

the court reversed a jury verdict in favor of the plaintiff because the employer did not regard the plaintiff as having a substantial limitation of a major life activity. The court first noted that, in the context of a "regarded as" disability case, "a significant impairment is one that is viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of job tasks." *Id.* 100 F.3d at 913. The court then found insufficient evidence that the plaintiff was disabled under the ADA. *Id.* at 914–15. Following his diagnosis with cancer, the plaintiff continued to perform the same or similar work that he had previously performed. *Id.* at 913. The plaintiff did not indicate to his employer, either before or after his diagnosis with cancer, that he was unable to perform the work assigned to him or that he was unable to care for himself. *Id.* at 914. Adjustments the employer made to the plaintiff's work schedule to accommodate medical treatment were insufficient to establish that the employer regarded him as being substantially disabled. *Id.*

In response to GE's arguments, Smith asserts that HIV/AIDS is recognized as inherently substantially limiting and thus all Smith need do is show that he was perceived as having HIV/AIDS and that his harassment was in accordance with this perception. Smith relies, in part, on 29 C.F.R. § 1630.2(*l*)(3), which states:

> An individual satisfies the third part of the "regarded as" definition of "disability" if the employer or covered entity erroneously believes the individual has a substantially limiting impairment that the individual does not have. This situation could occur, for example, if an employer discharged an employee in response to a rumor that the employee is infected with Human Immunodeficiency Virus (HIV). Even though the rumor is totally unfounded and the individual has no impairment at all, the individual is considered an individual with a disability because the employer perceived of this individual as being disabled.

Smith has presented evidence that he was perceived by some co-workers and supervi-

**10.** Smith Dep. at 624–25, 629.

sors as being HIV-positive. Thus, Smith argues that he is *per se* covered by 29 C.F.R. § 1630.2(*l*)(3). Smith further argues that since he has presented evidence that he was harassed at work [11], he has shown that GE treated him as having an impairment that substantially limits a major life activity.

It is clear that if Smith had been fired because GE felt he could not keep up with the demands of his job as a result of his HIV-positive status, then Smith would be a "qualified individual with a disability" for purposes of the ADA. In the present case, however, Smith is asking this court to rule that he is *per se* a qualified person with a disability, simply because GE perceived him to be HIV-positive, regardless of whether GE perceived Smith to be substantially limited in a major life activity, or treated him as if he was substantially limited in a major life activity.

GE strongly urges this court to reject Smith's argument, contending that the adoption of Smith's argument means that everyone may "opt in" to the class of persons protected by the ADA simply by erroneously telling their employer that they are HIV-positive. GE also points out that Smith's *per se* argument is contrary to well-established law in this and other circuits. *See Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959, 962 (7th Cir.1996) ("A disability determination ... should not be based on abstract lists or categories of impairments, as there are varying degrees of impairments...."); *Whitfield v. Pathmark Stores, Inc.*, 971 F.Supp. 851, 860 (D.Del.1997) ("something more than mere knowledge on the employer's part of the disability is required to sustain a claim of 'regarded as' disabled."); *Howard v. Navistar*, 904 F.Supp. 922, 930 (E.D.Wis.1995) ("Whether Navistar regarded him as being physically impaired is irrelevant. What matters is whether Navistar regarded the impairment as substantially limiting Howard's ability to perform a major life activity."); *Fenton v. Pritchard Corp.*, 926 F.Supp. 1437, 1444 (D.Kan.1996) ("the employer must perceive an impairment, and the employer must perceive that the impairment substantially limits a major life activity."); *Johnson v. Boardman Petroleum, Inc.*, 923 F.Supp. 1563, 1568 (S.D.Ga.1996) ("In order for Johnson to prove she had a disability under this third definition, she must show Boardman perceived that not only did she suffer from a mental impairment, but that such impairment substantially limited her ability to work."); *McIntosh v. Brookdale Hosp. Med. Center*, 942 F.Supp. 813, 822 (E.D.N.Y.), *aff'd*, 125 F.3d 844, 1997 WL 606746 (2nd Cir.1997) ("Accordingly, because the record does not support a reasonable inference that defendant regarded plaintiff's hypertension to have substantially limited her ability to work in spheres of employment beyond her position as a nurse at Brookdale Hospital, summary judgment likewise is warranted on plaintiff's perceived disability claim.").

Smith is essentially requesting that the court analyze his ADA case under Title VII standards. That is, under Title VII one only need show that they are a certain sex, race, national origin, etc., and they are "qualified person" for purposes of Title VII even if their employer did not regard their status (as a female, African–American, Jew, etc.) as impacting their job or life activities. The ADA, however, specifically requires that the alleged impairment "substantially limit a major life activity". Obviously, if a person who does, in fact, have HIV/AIDS must meet this test, a person who is alleging that he was perceived as having HIV/AIDS, must also meet the test. Any other interpretation would totally rewrite the statute, which this court is not at liberty to do.

■ Smith has also argued that even if HIV/AIDS are not recognized as inherently limiting impairments, they are widely perceived by the general public to be substantially limiting impairments. Smith has submitted various documentation to this court, including expert testimony and articles about AIDS, in support of his assertion that the public has placed a stigma on persons believed to have HIV/AIDS.

---

11. Smith alleges that he was harassed by one or more anonymous co-workers. GE contends that the acts of harassment did not occur or were self-inflicted by Smith in an attempt to create evidence for an ADA case.

GE, in a motion filed on June 19, 1998, has requested that Smith's documentation be stricken from the record. This court will grant GE's motion to strike. Simply stated, the general public's view of HIV/AIDS is irrelevant to the specific issues before this court. Smith must show that he was personally perceived to have a substantially limiting impairment, and that this perception was held by GE. Smith has failed to present any evidence on this point. Thus, it is clear that Smith is not a "qualified individual with a disability" for purposes of the ADA. Accordingly, GE's motion for summary judgment will be granted on this issue.

■ GE has also requested summary judgment on the issue of whether Smith is precluded from bringing suit under the ADA because he allegedly lied about his HIV status. GE acknowledges that this is a question of first impression. However, GE maintains that common sense and equity considerations compel the conclusion that one cannot seek the protections of the ADA by falsely representing that they have an impairment.

It is clear that the ADA is limited in scope and does not provide for general protection of medically afflicted persons. *Christian v. St. Anthony Med. Center, Inc.*, 117 F.3d 1051, 1053 (7th Cir.1997). GE contends that the purpose of the ADA is not served by an extension of its protection to persons, like Smith, who mislead others by falsely claiming an illness or impairment. GE alleges that Smith created the rumors of his HIV status, of which he now complains. GE further alleges that Smith then perpetuated the perception that he was HIV-positive, even to the extent of creating false claims of positive HIV antibody tests, assertions of alleged treatment for HIV infection and false assertions of participation in HIV studies and/or conferences. Yet the undisputed truth is that Smith always tested negative for HIV antibodies, never obtained any treatment for alleged HIV infection and never even consulted his long-time physician concerning his alleged HIV status.

■ GE directs the court to a Seventh Circuit case wherein the Court considered a related question, and held that an ADA plaintiff cannot create his own disability by failing to control an otherwise controllable illness or impairment. In *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563 (7th Cir.1997), the Court held: "A plaintiff cannot recover under the ADA if through his own fault he fails to control an otherwise controllable illness." The *Van Stan* court relied upon the earlier decision of *Siefken v. Village of Arlington Heights*, 65 F.3d 664 (7th Cir.1995). In *Siefken*, a probationary police officer was discharged by his employer after experiencing a severe diabetic reaction while on duty. *Id.* Siefken's employer hired him knowing that he was a diabetic but believing that Siefken could monitor his medical condition sufficiently to allow him to perform the duties of a patrol officer. *Id.* at 666. Siefken failed to adequately monitor his condition and experienced a diabetic reaction resulting in disorientation and memory loss. *Id.* at 665. In rejecting his claim under the ADA, the court wrote

> We only hold that when an employee knows that he is afflicted with a disability, needs no accommodation from his employer, and fails to meet "the employer's legitimate job expectations," *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir. 1995), due to his failure to control a controllable disability, he cannot state a cause of action under the ADA.

*Id.* 65 F.3d at 667.

GE argues that, since someone who actually has an impairment or illness cannot create his or her own disability through a willful or even negligent failure to take reasonable steps to control the illness or impairment, then Smith (who has no impairment at all) should not be permitted to create coverage for himself simply by deceiving his employer and co-workers. GE claims that there are no genuine issues of fact concerning Smith's false claims of HIV infection. GE claims that it is undisputed that:

1.  Smith told GE medical staff that he tested positive for HIV infection, when no positive test results exist.

2.  Smith told GE medical staff that he was obtaining treatment for HIV infection when, in fact, he never sought such treatment from anyone.

3. Smith was tested on multiple occasions for HIV antibodies and all test results were negative.

4. Smith never told his family physician about any fear or suspicion of HIV infection.

5. Smith's family physician testified that he advised Smith of each and every negative HIV antibody test result.

6. Smith told various co-workers, supervisors and GE medical personnel that he was HIV-positive.

7. Smith falsely told GE medical staff that he was going to Atlanta to participate in an HIV study.

8. Within two weeks of his alleged constructive discharge, Smith met with Dr. Fawver and Dr. Ross and told both of them that he was not HIV infected.

9. Smith told the EEOC investigator that he was not HIV infected and that his test results were negative.

10. Despite Smith's claims of frequent illnesses, he has not produced evidence supporting any treatment for any illness.

GE contends that it is undisputed that Smith not only created the perception of his alleged HIV infection, but he then engaged in further acts of deception in order to continue and maintain that perception. Thus, GE concludes that there are no genuine issues of material facts concerning Smith's lack of a reasonable or good faith belief for his false assertions of HIV infection.

Smith, however, strongly asserts that there is ample evidence for a jury to conclude that while Smith's belief about his HIV infection was mistaken, he did not "lie" about his status. Smith relies on the following facts:

1. While in a Florida hospital, for emergency surgery, he recalled Dr. Gupta asking him "how long have you been HIV positive" and he recalls being in "shock".

2. Smith adopted and held this belief for some time due to other factors. Smith is homosexual and had, in the past, engaged in sexual relations with partners who were HIV-infected.

3. For approximately a year and a half following his surgery, Smith had frequent health problems including respiratory and gastrointestinal conditions.

4. Prior to Smith's return from sick leave in 1992, rumors had begun to circulate among Smith's co-workers that he had AIDS and had gone to California to seek treatment.

5. When Smith returned from sick leave, in August 1992, he appeared to have lost a tremendous amount of weight and his appearance was described by co-workers as being consistent of that of someone who had AIDS.

While it is a very close question, based on the present record, this court concludes that it cannot rule as a matter of law that Smith lacked a good faith belief that he was HIV infected. While the evidence strongly favors GE on this issue, Smith has presented sufficient evidence that his misrepresentation was inadvertent to avoid summary judgment on this issue. However, as the court has already ruled that Smith has failed to meet his burden of showing that he is a qualified individual with a disability, summary judgment will be granted in favor of GE.

### Conclusion

For all of the forgoing reasons, GE's motion for summary judgment is hereby GRANTED. Additionally, GE's motion to strike is also hereby GRANTED.